IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
     v.                         ) Civil No. 12-00319 ACK-KSC
                                )
RONALD B. STATON, BRENDA STATON,)
NAVY FEDERAL CREDIT UNION,       )
CAPSTEAD MORTGAGE CORPORATION,   )
and STATE OF HAWAII,            )
                                )
            Defendants.         )
_____)

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE
THIRD CLAIM IN THE COMPLAINT**

For the reasons set forth below below, the Court GRANTS
Plaintiff United States' Motion for Summary Judgment on the Third
Claim in the Complaint, ECF No. 109, ORDERS that Plaintiff's
federal tax liens be foreclosed on the real property owned by
Defendants Ronald Staton and Brenda Staton, located at 233
Kalalau Street, Honolulu, Hawaii 96825 (the "Residence"), and
ORDERS the sale of the Residence free and clear of all liens,
including the senior mortgage of Defendant Capstead Mortgage
Corp. ("Capstead").  A separate Order of Foreclosure and Judicial
Sale will follow this Order.

In addition, pursuant to Fed. R. Civ. P. 41(a)(2) and
Plaintiff's request, the Court DISMISSES with prejudice Count I
of Plaintiff's Complaint, ECF No. 1.

1

## **FACTUAL HISTORY**

On or about August 19, 1987, Defendants Ronald Staton and Brenda Staton (the "Statons") entered into an Agreement of Sale to purchase the Residence, located at 233 Kalalau Street, Honolulu, Hawaii 96825.  Decl. of Charles M. Duffy ("Duffy Decl.") ¶ 8, Ex. G, ECF Nos. 109-2, 109-4.  The Statons were granted the Deed to the Residence on or about July 30, 1990. Duffy Decl. ¶ 9, Ex. H, ECF Nos. 109-2, 109-5.  The Agreement of Sale and Deed indicate that the Statons purchased and own the Residence as tenants by the entirety.  Duffy Decl. ¶¶ 8-9, Exs. G § 1.C, H § 3, ECF Nos. 109-2, 109-4, 109-5.

The Statons accrued assessments for unpaid federal income taxes between 2000-2007.  As relevant to the instant motion, tax and related assessments were made against Ronald Staton individually for his 2001 through 2007 income tax years.[1]

---

[1] As further discussed below, it appears that Brenda Staton's liability for federal income taxes for 2000, a year during which she filed jointly with Ronald Staton, is no longer an issue.  Mem. in Support of Mot. at 2, ECF No. 89-1.  Count I of Plaintiff's Complaint sought to reduce to judgment the Government's tax assessment against the Statons for the year 2000.  Compl. ¶¶ 20-21, ECF No. 1.

However, Plaintiff has since indicated that the Statons have paid that liability in full and has requested dismissal of that claim.  Mot. for Partial Summary Judgment at 2, ECF No. 89-1. Plaintiff also clarified that the Statons' tax debts for the year 2000 were the basis for a $93,962.41 federal tax lien that remained reflected in a Title Report that had been submitted to the Court.  See United States' Br. Regarding the Court's July 31, 2015 Order at 1-2, ECF No. 144; Title Report at 4, ECF No. 138-2. Plaintiff released that tax lien on August 11, 2015.  See United

(continued...)

Despite the Government's notice and demand for payment, Mr. Staton did not pay the full assessment amounts.  Compl. ¶¶ 16-19, ECF No. 1.

The Government filed notices of its federal tax liens ("NFTL's") related to its tax and related assessments made against Mr. Staton.  The same NFTL's were filed with the State of Hawaii Bureau of Conveyances on April 3, 2006, December 5, 2006, July 10, 2007, April 7, 2009, and May 12, 2009.  Duffy Decl. ¶¶ 2-3, 5-7, Exs. A-B, D-F, ECF Nos. 109-2, 109-3.  The Government also filed a Notice of Pendency of Action regarding the instant lawsuit with the State of Hawaii Bureau of Conveyances on June 15, 2012.  Duffy Decl. ¶ 11, Ex. I, ECF Nos. 109-2, 109-5.

Additional parties that appear to have an interest in the Residence are Defendants State of Hawaii, Capstead, and Navy Federal Credit Union ("NFCU").  Discovery responses submitted by Plaintiff indicate that Capstead owns, and NFCU services, a loan that was made to the Statons to allow them to purchase the Residence.  Duffy Decl. Ex. K ¶¶ 4, 6, ECF No. 109-5.  The original amount of the mortgage was $393,750.00.  Declaration of Charles Duffy Ex. 2 at 3, ECF No. 138-2.  Capstead reports that

---

[1]/(...continued)
States' Notice of Filing Release of Tax Lien Regarding the 2000 Tax Year, ECF No. 150.  The Court therefore DISMISSES Count I of the Complaint below.

as of July 31, 2015, the amount of principal and interest owed to Capstead under the Staton mortgage was $294,708.82, including a $26.00 recording fee.  Defendant Capstead Mortgage Corp.'s First Supplemental Report Pursuant to Order of July 31, 2015 ("Capstead's Supp. Rpt.") at 2, ECF No. 151; Affidavit of D. Christopher Sieber ("Sieber Affd.") ¶ 5, ECF No. 156.[2]

The Court notes that Capstead's interest in the Residence was clarified through a recent assignment related to the subject mortgage.  On April 6, 2015, Plaintiff was directed to file a Title Report for the Residence with the Court, which it did on April 7, 2015.  See Minute Order, ECF No. 124; Notice of Filing Title Report Provided by Internal Revenue Service, ECF No. 125.  That Title Report indicated that the Statons' mortgage had been assigned to an entity named Texas Commerce Bank N.A. ("Texas Commerce Bank") on September 25, 1993, without any further indication that the interest was assigned back to Capstead at any

---

[2] The parties appear to dispute certain additional amounts that may be owed to Capstead and NFCU in attorneys' fees.  See Mem. in Support of Mot. at 5-6, ECF No. 109-1.  Specifically, Capstead seeks to recover approximately $49,000.00 in attorneys' fees and costs in addition to the aforesaid $294,708.82 owed under the Staton mortgage.  See Capstead's Supp. Rpt. at 2, ECF No. 151; Sieber Affd. ¶ 12, ECF No. 156; Defendant Capstead Mortgage Corp.'s Report Pursuant to Order of July 31, 2015 at 4, ECF No. 147.  Plaintiff opposes Capstead's recovery of fees and costs in excess of $35,000.00.  See United States' Response to Defendant Capstead Mortgage's Recent Court Filings at 1-2, ECF No. 152.
To the extent that this issue remains disputed, it will be addressed following the sale of the Residence and prior to the disbursement of the sale proceeds.

point.  Minute Order, ECF No. 128.  The Court therefore directed Plaintiff to file an updated Title Report.  Id.  Plaintiff did so on April 29, 2015, but the updated Title Report continued to show Texas Commerce Bank as the "custodian or trustee" of the mortgage.  See Notice of Filing Updated Title Report, ECF No. 30; Declaration of Charles Duffy Ex. A at 3, ECF No. 130-2.

In view of Texas Commerce Bank's apparent interest in the Residence, the Court directed on May 1, 2015 that it should be made a party to this lawsuit.  Minute Order, ECF No. 134. However, Plaintiff informed the Court on May 22, 2015 that Texas Commerce Bank, now apparently part of JP Morgan Chase Bank, was "transferring any interest that it may have in the subject mortgage" to Capstead.  Status Report at 2, ECF No. 135.  On July 29, 2015, Plaintiff provided the Court with a certified copy of a July 6, 2015 Assignment of Mortgage and a July 24, 2015 revised Title Report confirming this assignment of interest to Capstead. See Declaration of Charles Duffy Ex. 1-2, ECF Nos. 138-1, 138-2.

The Government and Defendant State of Hawaii, meanwhile, have stipulated that the United States' federal tax liens shall be completely satisfied before any liens of the State of Hawaii, in the event that the Court orders the foreclosure of the Residence.  See Stipulation regarding Priority between the United States of America and the State of Hawaii ¶ 3, ECF No.

70.[3/]

## **PROCEDURAL HISTORY**

On June 4, 2012, Plaintiff United States of America (the "Government") filed its Complaint against the Statons, Capstead, NFCU, and the State of Hawaii.  The Complaint seeks to reduce to judgment the federal tax assessments against the Statons filing jointly (Count I) and Ronald Staton filing individually (Count II).  It also seeks to foreclose the Government's federal tax liens on the Residence (Count III). Compl. ¶¶ 20-32, ECF No. 1.  Plaintiff's Complaint further requests that the Residence be sold at a judicial sale and that the sales proceeds be distributed "in accordance with the Court's findings as to the validity and priority" of the parties' interests in the Residence.  Id. at 10.

On June 27, 2014, Plaintiff filed a partial motion for summary judgment ("MSJ") related to Counts I and II of the Complaint.  ECF No. 89 ("Plf.'s First MSJ").  Plf.'s First MSJ indicated that Count I "should be dismissed," because the Statons' joint tax assessments, related solely to their filing for the 2000 tax year, have been paid in full.  Mem. in Support

_____

[3/] As discussed below, a proposed stipulation regarding priority between Capstead, NFCU, and Plaintiff was also submitted.  The Court was unable to issue an Order approving it, given that certain amounts of attorneys' fees referenced therein had not been established by the parties.  Minute Order of March 2, 2015, ECF No. 115.

of Mot. at 2, ECF No. 89-1.  As to Count II, Plf.'s First MSJ sought entry of judgment against Ronald Staton for the tax and related assessments made against him for his 2001 through 2007 separate income tax years.  Id. at 14-15.  Plf.'s First MSJ did not address Count III of the Complaint.

On September 30, 2014, pursuant to a stipulation filed by Plaintiff and Ronald Staton, the Court entered judgment against Mr. Staton with respect to his 2001, 2002, 2003, and 2005 income tax liabilities.  ECF No. 104.  The amount of that judgment is $273,715.67, plus interest accruing after July 1, 2014 and less any payments made or credits applied after that date.  Id. at 2.  On November 25, 2014, pursuant to another stipulation filed by Plaintiff and Ronald Staton, the Court entered judgment against Mr. Staton with respect to his remaining 2004, 2006, and 2007 income tax liabilities at issue in the Complaint.  ECF No. 108.  The amount of that judgment is $81,811.07, plus interest accruing after October 31, 2014 and less any payments made or credits applied after that date.  Id. at 2.

Mr. Staton's total outstanding liability reduced to judgment is therefore $355,526.74, plus accrued interest and minus any payments and credits.  Documentation filed by Plaintiff on August 18, 2015 shows that the current balance owed on the judgments against Mr. Staton, with interest calculated to

7

September 1, 2015, is $370,437.03.  <u>See</u> United States' Notice of the Updated Balance Due on the Judgments Previously Entered by the Court (Interest Calculated to September 1, 2015) at 1, ECF No. 154.

On December 29, 2014, Plaintiff filed its Motion for Summary Judgment on the Third Claim in the Complaint.  ECF No. 109 ("Plf.'s Second MSJ").  Plf.'s Second MSJ requests that the Government's federal tax liens and judgments be foreclosed and that the Residence be sold pursuant to the terms set forth in Plaintiff's Proposed Order of Foreclosure and Judicial Sale, submitted concurrently with Plf.'s Second MSJ.  Although Plaintiff has not submitted any formal valuation of the Residence, it reports that counsel's "Internet search" showed that the fair market value of the Residence is at least $1 million.  Mem. in Support of Mot. at 6, 11, ECF No. 109-1.  The latest Title Report submitted by Plaintiff also shows the Residence's assessed value for 2015 for real property tax purposes as $979,600.00.  Title Report at 11, ECF No. 138-2.

Plf.'s Second MSJ further requests the proceeds of its requested foreclosure sale be used first to cover the costs of sale and any outstanding property taxes on the Residence. Plaintiff suggests that the remaining proceeds should then be distributed among the parties through a stipulation or order of the Court, after the parties are given an opportunity to brief

8

their arguments regarding priority.[4/]  Id.  Plf.'s Second MSJ

also reiterates the Government's request that Count I of its

Complaint, relating to assessments for tax year 2000 which have

since been paid by the Statons, should be dismissed.  Id. at 2.

Plf.'s Second MSJ was set for hearing on April 6,

2015.[5/]  On March 25, 2015, having received no response to Plf.'s

Second MSJ from any Defendant, the Court directed Defendants to

file oppositions or statements of no opposition, pursuant to

---

[4/] Plf.'s Second MSJ admits that there "is an issue of lien priority" among the parties.  The parties do not appear to dispute the order in which their liens should be satisfied from the foreclosure sale proceeds; rather, Plaintiff challenges Capstead and NFCU's request to collect certain amounts of attorneys' fees as provided under the mortgage.  Mem. in Support of Mot. at 4-6, ECF No. 109-1.  However, the Government currently "is not requesting the Court to resolve the priority dispute."  Rather, the Government proposes that the Court should order the sale of the Residence and that the proceeds, after payment of sale expenses, should be paid into the Court's escrow to be distributed at a later date following the resolution of the priority disagreement.  Id. at 6.
    Although the Court believes that it may have been more efficient for the parties to have resolved their dispute regarding priority at an earlier date, the Government's proposed approach is permissible.  See, e.g., Order of Foreclosure and Judicial Sale, United States v. Lindsey, et al., Civ. No. 11-00664 JMS-KSC, Dkt. No. 81 * 11-12 (D. Haw. July 30, 2013) (distribution of sale proceeds to be determined through stipulation or Court order at a later date); Order of Foreclosure and Judicial Sale, United States v. Webb, et al., Civ. No. 07-00564 JMS-KSC, Dkt. No. 83 * 13 (D. Haw. Oct. 23, 2008) (same).

[5/] An electronic notice of hearing on Plaintiff's MSJ was delivered to case participants registered to receive such notifications through the Court's electronic filing system. Participants not registered to receive electronic notifications were served by first-class mail on January 6, 2015.  Court's Certificate of Service, ECF No. 111.

Local Rule 7.4, by March 27, 2015.  ECF No. 116.[6/]

On March 25, 2015, Defendant State of Hawaii filed a Statement of No Opposition to Plf.'s Second MSJ.  ECF No. 117. The statement indicates that it is filed "provided that the Director's claim to the subject property is acknowledged and the respective priorities in the proceeds of the sale of the subject property be determined at a later date and hearing."  Id. at 2. On March 25, 2015, Defendants NFCU and Capstead also filed a Position Statement regarding Plf.'s Second MSJ.  ECF No. 118. The statement indicates that NFCU and Capstead "take no position" regarding Plf.'s Second MSJ but "reserve their right to assert their priority interests in the proceeds of the sale of the real property at issue, if any, and defend said priority interests at the trial of this action if necessary."  Id. at 2.

Brenda Staton has filed no response to Plf.'s Second MSJ.  On March 27, 2015, Ronald Staton initially filed with the Court correspondence indicating that he "takes no position" on Plf.'s Second MSJ.  ECF No. 121.  Later that day, however, Mr. Staton filed with the Court additional correspondence indicating that he "opposes" Plf.'s Second MSJ.  ECF No. 122.  Each of the foregoing letters contains one sentence of body text, and neither

---

[6/] A copy of the Court's order was served on Defendants Ronald and Brenda Staton by first-class mail to their address of record and by e-mail using an address provided by the Statons to the Court on March 25, 2015.  Court's Certificate of Service, ECF No. 116.

explains the legal basis for Mr. Staton's position.

A hearing was held on the instant motion on April 6, 2015.  On the same day, as discussed above, the Court ordered Plaintiff to submit an updated Title Report for the Residence, which ultimately resulted in an assignment of interest in the subject mortgage to Capstead.  In addition, on April 9, 2015, the Court directed Plaintiff and any other party that wished to do so to file a brief regarding Plaintiff's authority under 26 U.S.C. § 7403 to seek a foreclosure sale under a tax lien to include the foreclosure of the apparent senior lien held by Capstead under its mortgage.  See Minute Order, ECF No. 138.

Plaintiff filed a Brief Regarding the Court's April 9, 2015 Order on April 14, 2015.  ECF No. 129.  As the Court noted in its Minute Order of July 31, 2015, the Court "received no opposition to the property being sold free and clear of all liens, including the senior mortgage now held by Capstead," in response to its April 9, 2015 Minute Order inviting briefing on Plaintiff's authority to seek a foreclosure sale under a tax lien to include the foreclosure of the apparent senior lien held by Capstead under its mortgage.  See Minute Order of July 31, 2015, ECF No. 139.  Accordingly, the Court directed Capstead to file the current amounts due under its mortgage and whether Capstead would be seeking a deficiency judgment and minimum upset price related to the foreclosure sale of the Residence.  Capstead and

11

Plaintiff were also directed to confer regarding a foreclosure sale commissioner.  Id.  The Court set a hearing on the foregoing matters for August 14, 2015.

Capstead filed documentation pursuant to the Court's July 31, 2015 Minute Order on August 10, 2015.  ECF No. 147.  It also filed a supplement thereto on August 12, 2015.  ECF No. 151. Capstead reported the amount due under the Staton mortgage as $294,708.82 and requested a $350,000 minimum upset price for the foreclosure sale, the right to credit bid, and a deficiency judgment in the event that the sale proceeds do not cover the Statons' full indebtedness under their mortgage.  See Capstead's Supp. Rpt. at 2-3, ECF No. 151.

Ronald Staton also submitted a letter request to the Court on August 10, 2015, requesting a 90-day continuance of the Court's upcoming August 14, 2015 hearing in a continuing effort to satisfy his federal tax debts.  See Letter of Ronald B. Staton to Hon. Alan C. Kay, Aug. 10, 2015, ECF No. 145.

The Court held a hearing on Ronald Staton's continuance request and the matters addressed in its July 31, 2015 Minute Order on August 14, 2015.  The Court denied Mr. Staton's request for a continuance.  Transcript of Proceedings, Aug. 14, 2015 ("Tr."), 9:13-14.  Capstead confirmed its request for a minimum upset price of $350,000.00 for the foreclosure sale, to which Plaintiff did not object.  Tr. 10:21-24, 12:3-17.  Capstead and

12

Plaintiff also requested deficiency judgments in the event that the foreclosure sale proceeds do not cover their outstanding liens.  Tr. 14:15-21, 15:8-10.  In addition, the Statons did not object to Capstead's report of the amount owed under their mortgage, Tr. 15:11-18, and no party objected to a sale of the Residence free and clear of all liens, Tr. 10:4-19.

On August 18, 2015, pursuant to the Court's direction, Plaintiff filed United States' Notice of the Updated Balance Due on the Judgments Previously Entered by the Court (Interest Calculated to September 1, 2015), ECF No. 154, reporting the current amount owed on Plaintiff's judgments against Mr. Staton as $370,437.03.  On August 25, 2015, Capstead confirmed the current amount owed under the Staton mortgage as $294,708.82.  Sieber Affd. ¶ 5, ECF No. 156.

## **STANDARD**

### I.   **Summary Judgment**

A party is entitled to summary judgment on any claim or defense if it can be shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by either "citing to particular parts of materials in the record" or "showing that the materials cited do

13

not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1).

The movant has the burden of persuading the court as to

the absence of a genuine issue of material fact. Avalos v. Baca,

596 F.3d 583, 587 (9th Cir. 2010). If the movant satisfies its

burden, the nonmovant must present evidence of a "genuine issue

for trial," Fed. R. Civ. P. 56(e), that is "significantly

probative or more than merely colorable,"[7/] LVRC Holdings LLC v.

Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted).

When evaluating a motion for summary judgment, the court must

"view the facts and draw reasonable inferences in the light most

favorable to the party opposing the summary judgment motion."

Scott v. Harris, 550 U.S. 372, 378 (2007). If the nonmoving

party cannot produce sufficient evidence to demonstrate that a

triable issue of fact exists, the moving party is entitled to

summary judgment as a matter of law. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252 (1986).

---

[7/] The Ninth Circuit has explained that "[l]egal memoranda
and oral argument, in the summary-judgment context, are not
evidence, and do not create issues of fact capable of defeating
an otherwise valid motion for summary judgment." Flaherty v.
Warehousemen, Garage and Service Station Emp. Local Union No.
334, 574 F.2d 484, 486 n.2 (9th Cir. 1978), see also Barcamerica
Intern. USA Trust v. Tyfield Importers, 289 F.3d 589, 593 n.4
(9th Cir. 2002).

## II.  Special Considerations for *Pro Se* Litigants

The Ninth Circuit has cautioned that courts must treat *pro se* litigants with liberality.  See, e.g., Waters v. Young, 100 F.3d 1437, 1441 (9th Cir. 1996) (explaining that courts seek to ensure that *pro se* litigants do not "unwittingly fall victim to procedural requirements that they may, with some assistance from the court, be able to satisfy").  Accordingly, a *pro se* litigant's pleadings must be read more liberally than those drafted by counsel.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  In considering a *pro se* party's opposition to summary judgment, the Court must consider such party's contentions in motions and pleadings that are verified or offered under penalty of perjury.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

However, a *pro se* litigant "is not excused from knowing the most basic pleading requirements."  Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (citations omitted) (declining to consider *pro se* litigant's personal jurisdiction challenge where he had already filed a responsive pleading not raising that defense).  "Ignorance of court rules does not constitute excusable neglect, even if the litigant appears *pro se*." Swimmer v. IRS, 811 F.2d 1343, 1345 (9th Cir. 1987).

**DISCUSSION**

In the instant case, the Court has already entered judgment against Ronald Staton for his income tax liabilities and associated penalties plus statutory interest.  As noted above, Mr. Staton's total outstanding liability is $370,437.03, with interest calculated to September 1, 2015.  See United States' Notice of the Updated Balance Due on the Judgments Previously Entered by the Court (Interest Calculated to September 1, 2015) at 1, ECF No. 154.  He is also jointly liable with Brenda Staton on a senior mortgage on the Residence now held by Capstead, originally in the amount of $393,750.00.  Title Report at 3-4, ECF No. 138-2.  The Statons have not objected to Capstead's report of the current amount owed under their mortgage, which is $294,708.82 as of July 31, 2015.  See Tr. 15:11-18; Capstead's Supp. Rpt. at 2, ECF No. 151; Sieber Affd. ¶ 5, ECF No. 156.  The remaining question before the Court, presented in the Complaint's Count III, is whether the Government is entitled to foreclosure of its liens against the Residence and an order for sale of the property.

## I.    Foreclosure of Ronald Staton's Federal Tax Liens against the Residence

The United States obtains a lien upon "all property and rights to property, whether real or personal" belonging to a person who fails to pay any tax owed, after providing notice and demand for payment.  26 U.S.C. § 6321.  Spouses that own property

16

as tenants by the entirety under Hawaii law hold "property" or "rights to property" subject to liens under 26 U.S.C. § 6321. See, e.g., U.S. v. Lindsey, Civ. No. 11-00664 JMS-KSC, 2013 WL 3947757 * 5 (D. Haw. July 30, 2013) (citations omitted).  The amount of the Government's lien includes the tax amount owed as well as "any interest, additional amount, addition to tax, or assessable penalty," plus costs.  Id.  The lien arises as of the date of the assessment and continues until the tax liability is satisfied or becomes unenforceable.  26 U.S.C. § 6322.

The Government's tax liens are perfected upon assessment and effective against the taxpayer without notice. See Lindsey, 2013 WL 3947757 at * 6 (citing United States v. Vermont, 377 U.S. 351, 355 (1964); 26 U.S.C. §§ 6321, 6323(a)). However, to be valid against purchasers, mechanic's lienors, judgment lien creditors, or holders of security interests, the Government must file a notice of its lien that complies with state law.  26 U.S.C. § 6323(a), (f).  In Hawaii, such notice must be filed with the state's Bureau of Conveyances.  See Midway Fin. Corp., Ltd. v. Walters, Civ. No. 84-0289, 1989 WL 201204 * 3 (D. Haw. July 25, 1989) (tax lien is perfected under 26 U.S.C. § 6323 upon filing notice with the Hawaii Bureau of Conveyances).

In order to enforce its tax liens, the Government is empowered, under 26 U.S.C. § 7403, to join all parties with an interest in the subject property and request a judicial sale of

17

the property.  United States v. Rodgers, 461, 677, 691-92 (1983)

(citing 26 U.S.C. § 7403).  The Government may seek the sale not

only of the debtor's interest in the property, but the entire

property held by the debtor and his spouse in a tenancy by the

entirety.  Id. at 693-94; see also In re Pletz, 221 F.3d 1114,

1118 (9th Cir. 2000).  In such instances, the Court may order the

sale of the entire property and compensate the nondebtor spouse

for her ownership interest.  Pletz, 221 F.3d at 1117 (citations

omitted).  Each spouse owns a fifty percent interest in property

held as tenants by the entirety under Hawaii law.  Lindsey, 2013

WL 3947757 at * 6 n.3 (citations omitted); United States v. Webb,

Civ. No. 07-00564 JMS-KSC, 2008 WL 4761745 * 6 n.12 (D. Haw. Oct.

23, 2008) (citations omitted).

        In this case, Defendants have raised no genuine issue

of material fact regarding the enforceability of the Government's

tax liens through foreclosure and sale of the Residence.  The

evidence shows that Ronald Staton and Brenda Staton purchased and

own the Residence as tenants by the entirety, as reflected in the

Agreement of Sale and Deed.  Duffy Decl. ¶¶ 8-9, Exs. G, H, ECF

Nos. 109-2, 109-4, 109-5.

        Tax and related assessments were made against Ronald

Staton individually for his 2001 through 2007 income tax years;

despite the Government's notice and demand for payment, Mr.

Staton has not paid the full assessment amounts.  Compl. ¶¶ 16-

19, ECF No. 1.  Mr. Staton's current outstanding tax liability is $370,437.03, with interest calculated to September 1, 2015.  See United States' Notice of the Updated Balance Due on the Judgments Previously Entered by the Court (Interest Calculated to September 1, 2015) at 1, ECF No. 154.  The Government's tax liens were perfected as against Ronald Staton at the time of the assessments for tax years 2001-2007.  The Government's liens were also perfected as against other creditors when it filed NFTL's for its assessments against Mr. Staton with the State of Hawaii Bureau of Conveyances, on April 3, 2006, December 5, 2006, July 10, 2007, April 7, 2009, and May 12, 2009.  Duffy Decl. ¶¶ 2-3, 5-7, Exs. A-B, D-F, ECF Nos. 109-2, 109-3; see also Compl. ¶¶ 28-32, ECF No. 1.[8/]  Accordingly, the Court ORDERS that the Government's tax liens against Ronald Staton be foreclosed against the Residence.

## II.  Judicial Sale of the Residence

The Government has complied with the requirements of 26 U.S.C. § 7403 for entry of an order of judicial sale.  Defendant Ronald Staton has failed to pay his federal tax liabilities, and the Court has foreclosed the Government's federal tax liens against the Residence.  Plaintiff commenced this action in the district court, and it appears that all parties "having liens

---

[8/] The above-referenced NFTL's cover all of Mr. Staton's tax liabilities for the 2001-2007 tax years.  The Government also filed a Notice of Pendency of Action regarding the instant lawsuit with the State of Hawaii Bureau of Conveyances on June 15, 2012.  Duffy Decl. ¶ 11, Ex. I, ECF Nos. 109-2, 109-5.

upon or claiming any interest in the property involved in such action," 26 U.S.C. § 7403(b), have been named as Defendants. Compl. ¶¶ 5-9, ECF No. 1.

The Court does, however, address two special considerations presented in this case: the existence of a mortgage senior to the Government's tax liens and the interest of Brenda Staton in the property.

First, as noted above, the Court requested on April 9, 2015 that Plaintiff and any other party that wished to do so file a brief regarding Plaintiff's authority under 26 U.S.C. § 7403 to seek a foreclosure sale under a tax lien to include the foreclosure of the apparent senior lien held by Capstead under its mortgage. See Minute Order, ECF No. 138. Plaintiff filed a Brief Regarding the Court's April 9, 2015 Order on April 14, 2015. ECF No. 129.

As Plaintiff points out, there is "no language in Section 7403 which suggests that it does not apply when the United States' tax liens are junior to other liens." Id. at 3. Moreover, as a practical matter, the Government must often seek to foreclose on property where there is a first priority mortgage holder. In such cases, this Court has allowed the sale of the real property to satisfy federal tax liabilities and has ordered that the mortgage interest be satisfied before the liens are paid from sale proceeds. Id. at 3-4 (citing Webb, 2008 WL 4761745;

Lindsey, 2013 WL 3947757).

Other federal courts have adopted the same practice. As the court explained in Banner Grp. Corp. v. U.S., No. 6:06-cv-706-Orl-22KRS, 2008 WL 859037 * 1 (M.D. Fla. Jan. 7, 2008):

> [The senior lienholder] seeks a summary judgment ruling[9] that either the United States must satisfy [its] mortgage *prior* to any foreclosure sale, or any foreclosure sale be subject to [its] mortgage interest . . . [the senior lienholder] is adequately protected by satisfaction of its mortgage from the proceeds of the foreclosure sale.

See also, e.g., Washington v. U.S., 402 F.2d 3, 6 (4th Cir. 1968) (affirming order of foreclosure and judicial sale under 26 U.S.C. § 7403 and directing that senior liens should be satisfied from the sale proceeds, with the balance applied to the government's tax lien); U.S. v. Hardin, Civ. A. 93-62-VALWDO, 1995 WL 454144 * 3 (M.D. Ga. Mar. 21, 1995) (ordering foreclosure and judicial sale under 26 U.S.C. § 7403, notwithstanding existence of three

---

[9] The Court observes that, in this case, Capstead has made no such request and does not appear to oppose an order of foreclosure and judicial sale.  To the contrary, Capstead filed a Statement of No Opposition regarding the instant motion.  ECF No. 118.  Capstead also submitted a proposed Stipulation Regarding Priority among itself, Plaintiff, and NFCU with respect to the proceeds of a judicial sale of the Residence, although the Court was unable to issue an order approving that stipulation given the parties' failure to establish the amounts of certain legal fees referenced therein.  See ECF No. 118.

Capstead does, moreover, seek a $350,000 minimum upset price for the foreclosure sale, the right to credit bid, and a deficiency judgment in the event that the sale proceeds do not cover the Statons' full indebtedness under their mortgage.  See Capstead's Supp. Rpt. at 2-3, ECF No. 151.

senior liens with priority over plaintiff's); Reid v. U.S., No. C98-5423, 2001 WL 260056 * 7 (W.D. Wash. Jan. 31, 2001) (ordering foreclosure and judicial sale under 26 U.S.C. § 7403, with proceeds to be used in satisfaction of senior mortgage before federal tax lien); U.S. v. Scharfman, No. 79 Civ. 4224(JMC), 1981 WL 1855 * 7 (S.D.N.Y. Aug. 14, 1981) (same); U.S. v. Conry, No. C-77-2722 SC, 1977 WL 1272 * 4 (N.D. Cal. Sept. 27, 1977) (same). The Court is therefore satisfied that it is appropriate to order foreclosure of Plaintiff's tax liens and a judicial sale of the Residence in this case, with the understanding that Capstead's senior mortgage will be satisfied from the sale proceeds before Plaintiff's liens.[10]

Second, Brenda Staton has an interest in the Residence that must be taken into account. According to the Title Report for the Residence, she and Ronald Staton own the Residence as tenants by the entirety. Title Report at 1, ECF No. 138-2. In this jurisdiction, a court may order the sale of the entire property under 26 U.S.C. § 7403 and compensate a nondebtor spouse for her fifty percent interest from the sale proceeds. See Pletz, 221 F.3d at 1117; Lindsey, 2013 WL 3947757 at * 6 n.3 (citations omitted); Webb, 2008 WL 4761745 * 6 n.12 (citations omitted).

---

[10] In any event, as noted above, the parties in this case have not objected to a sale of the Residence free and clear of all liens. Tr. 10:4-19.

However, the Title Report also shows that Brenda and Ronald Staton are jointly liable on the Capstead mortgage for the Residence. <u>See</u> Title Report at 3, ECF No. 138-2. The uncontested amount owed under the Statons' mortgage is $294,708.82 as of July 31, 2015. <u>See</u> Capstead's Supp. Rpt. at 2, ECF No. 151; Sieber Affd. ¶ 5, ECF No. 156; Tr. 15:11-18.

Accordingly, since the Court has determined that the Statons' Residence should be foreclosed and sold free and clear of all liens, including Capstead's senior mortgage, without objection from any party, the foreclosure of Capstead's mortgage necessarily includes Brenda Staton's one-half interest in the Residence.[11/]

Depending on the circumstances of the judicial sale of the Residence, the Court will therefore need to determine an amount of appropriate compensation for Brenda Staton's one-half interest in the property that takes into account her joint and several liability on the mortgage held by Capstead, which is being foreclosed.[12/]

---

[11/] The Court notes that even if the Statons' Residence was not subject to Capstead's mortgage under which Brenda Staton is jointly and severally liable the Court would still find her interest in the Statons' Residence to be included in the foreclosure sale of Plaintiff's liens.

[12/] A district court does enjoy "limited discretion" not to order a foreclosure sale of a jointly-owned residence pursuant to 26 U.S.C. § 7403, in order to "take into account both the Government's interest in prompt and certain collection of

(continued...)

<hr />

[12]/(...continued)
delinquent taxes and the possibility that innocent third parties
will be unduly harmed by that effort." Rodgers, 461 U.S. at 709,
711.  Such discretion should, however, be exercised "rigorously
and sparingly," recognizing the Government's "paramount" interest
in effective tax collection.  Id. at 711.

     In this balancing of equities, courts are to consider:
(1) the extent to which the Government's financial interests
would be prejudiced if it were able to sell only a partial
interest in the property, rather than the whole property, (2)
whether the non-liable owner would have a legally recognized
expectation that her property would not be subject to forced
sale, (3) dislocation costs and potential under-compensation to
the non-liable owner, and (4) the comparative property interests
of the liable and non-liable owners.  Id. at 710-11.

     Courts within this Circuit have held that it is
Defendants' burden to show that the Court should exercise its
limited discretion to refrain from ordering a foreclosure sale.
See, e.g., U.S. v. McGrew, Civ. No. 14-02647, 2014 WL 7877053 * 9
(C.D. Cal. Dec. 19, 2014); U.S. v. Padilla, Civ. No. S-01-2300
DFL-GGH, 2004 WL 2827891 * 1 (E.D. Cal. Oct. 25, 2004).  Here,
Brenda Staton has filed no written response to Plf.'s Second MSJ,
and Ronald Staton has simply indicated, without explanation, that
he "opposes" it.  ECF No. 122.  The Statons did present orally at
the Court's hearing of August 14, 2015, requesting a continuance
of that proceeding, discussing hardships related to the sale of
their home, and indicating that they hoped to be able to raise
new financing in satisfaction of Mr. Staton's tax debts that they
had been unsuccessful in obtaining over the last three years.
They did not, however, raise a genuine issue of material fact
bearing on whether to order a foreclosure sale.

     In any event, an examination of the Rodgers factors,
set forth above, shows that they favor the Government's position.
The first factor, economic prejudice to the Government, favors a
sale of the Residence.  The Residence appears to be a single-
family home, which the legal description of the property
indicates is located on a single lot of 11,537 square feet.  See
Duffy Decl. Ex. H at 7, ECF No. 109-5; see also Proposed Order,
Ex. A, ECF No. 109-7; Notice of Filing Certified Copy of
Assignment and Revised Report of Title Guaranty of Hawaii, Inc.
Ex. A, ECF No. 137-1.  Accordingly, the Court finds that a sale
of a partial interest in the property would be impractical and
likely to cause prejudice to Plaintiff.  See, e.g., McGrew, 2014
WL 7877053 at * 10 (finding that the sale of partial interest in
a single family residence would be impractical and cause "severe
                                                   (continued...)

12/(...continued)

prejudice" to the Government); U.S. v. Burtsfield, 556 F. Supp. 2d 1172, 1176 (D. Mon. 2008) (finding that the Government would "undoubtedly be prejudiced" if allowed to foreclose only on one spouse's partial interest in a single property).

The second factor, considering the non-liable owner's legally recognized expectations that her property would be shielded from forced sale, also does not favor Defendants. Brenda Staton has filed no position regarding Plf.'s Second MSJ and did not present at the Court's August 14, 2015 hearing any authority that would shield her interest in the Residence against a foreclosure sale to satisfy her husband's tax debts; as a result, the Court can only guess at her actual expectations as to her property rights. Regardless, she could have no legally cognizable expectation that the Residence could not be sold in order to satisfy Ronald Staton's tax debts. Under Hawaii law, spouses that own property as tenants by the entirety hold "property" or "rights to property" within the meaning of 26 U.S.C. § 6321. See Lindsey, 2013 WL 3947757 at * 5 (citations omitted). It is established within this jurisdiction that a Court may order the sale of the entire property under 26 U.S.C. § 7403 and compensate the nondebtor spouse for her fifty percent interest. See Pletz, 221 F.3d at 1117; Lindsey, 2013 WL 3947757 at * 6 n.3 (citations omitted); Webb, 2008 WL 4761745 * 6 n.12 (citations omitted).

The third factor, potential prejudice to the non-liable owner due to relocation costs and possible undercompensation, also does not favor Defendants. As noted above, Hawaii law allows the Court to order the sale of the Residence and fair compensation to Brenda Staton for her one-half interest in the property. As to relocation costs, Brenda Staton addressed at the Court's August 14, 2015 hearing the anticipated hardship of moving from her home but did not present evidence of prejudice greater than would occur in other cases involving foreclosures. Moreover, "the inherent inequity of being removed from one's home" is not sufficient to defeat foreclosure sale. If that were the rule, "the government could never foreclose on a jointly-owned residence – a result clearly untenable under § 7403." U.S. v. Bierbrauer, 936 F.2d 373, 375-76 (8th Cir. 1991).

Courts have considered, therefore, whether a particular defendant's dislocation costs would be "greater than in any other foreclosure action against a residence." Burtsfield, 556 F. Supp. 2d at 1177 (citing Bierbrauer, 936 F.2d at 375-76). The record shows no potential for unusual dislocation costs to Brenda Staton. Courts examining similar cases have held the same. See

(continued...)

Accordingly, the Court ORDERS the sale of the Residence to satisfy Mr. Staton's federal tax liabilities.  The property will be sold free and clear of all liens, including Capstead's mortgage.

### III. Dismissal of Count I of Plaintiff's Complaint

As a final matter, it appears that Plaintiff has repeatedly mentioned that the Court should dismiss Count I of its Complaint.  Plf.'s First MSJ indicated that Count I "should be dismissed," because the Statons' joint tax assessments, related solely to their filing for the 2000 tax year, have been paid in full.[13/]  Mem. in Support of Mot. at 2, ECF No. 89-1.  However, it

---

[12/](...continued)
Burtsfield, 556 F. Supp. 2d at 1177-78 (ordering foreclosure sale despite non-liable spouse's claim of prejudice where she was 63 years old, was unemployed, had lived on the property for nine years, had no dependent children living on the property, and would be unable to purchase a new home but could secure alternative housing using the proceeds of the sale).

The fourth factor, regarding property owners' comparative interests, also weighs in favor of a foreclosure sale.  Where owners' property interests are equivalent, as here, courts have declined to prevent foreclosure sales under 26 U.S.C. § 7403.  See, e.g., U.S. v. Barr, 617 F.3d 370, 376 (6th Cir. 2010) (affirming district court's determination that this factor did not prevent foreclosure sale, because non-liable spouse had only a half interest in the property); Burtsfield, 556 F. Supp. 2d at 1178 (reaching same conclusion).  In sum, the Rodgers factors do not weigh against the sale of the Residence pursuant to 26 U.S.C. § 7403.

[13/] As discussed above, Plaintiff has clarified that the Statons' tax debts for the year 2000 were the basis for a $93,962.41 federal tax lien that remained reflected in a Title
(continued...)

does not appear that the claim was subsequently dismissed. Plf.'s Second MSJ reiterates the Government's request that Count I of its Complaint be dismissed.  Mem. in Support of Mot. at 2, ECF No. 109-1.

Plaintiff has not submitted a formal notice of dismissal or stipulation relating to Count I of its Complaint. However, the Court may order such dismissal at Plaintiff's request, without prejudice and "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).  As it appears that the tax liabilities at issue in Count I of the Complaint have been resolved, and there being no prejudice to Defendants in dismissing that claim, the Court DISMISSES with prejudice Count I of Plaintiff's Complaint.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's Motion for Summary Judgment on the Third Claim in the Complaint, ECF No. 109.  The Court further ORDERS that Ronald Staton's federal tax liens and Ronald and Brenda Staton's mortgage be foreclosed on the Residence, and ORDERS the sale of the Residence free and clear of all liens, including Capstead's

---

[13]/(...continued)
Report that was submitted to the Court.  See United States' Br. Regarding the Court's July 31, 2015 Order at 1-2, ECF No. 144; Title Report at 4, ECF No. 138-2.  Plaintiff released that tax lien on August 11, 2015, in view of the Statons' payment.  See United States' Notice of Filing Release of Tax Lien Regarding the 2000 Tax Year, ECF No. 150.

senior mortgage.  A separate Order of Foreclosure and Judicial Sale will follow this Order.

In addition, the Court DISMISSES with prejudice Count I of Plaintiff's Complaint, ECF No. 1, pursuant to Fed. R. Civ. P. 41(a)(2) and Plaintiff's request.

The Court understands the Statons are retired and Mr. Staton has a health problem, and the Court does not like to see people lose their homes.  However, Plaintiff has been working with the Statons for almost three years to resolve these tax problems.  The foreclosure process will take several weeks; if the Statons are successful in raising the necessary funds to pay Plaintiff, they should notify the Court immediately, and the sale will be stopped.

IT IS SO ORDERED.

DATED:     Honolulu, Hawai'i, August 31, 2015.

Alan C. Kay
Senior United States District Judge

United States v. Staton, et al., Civ. No. 12-00319 ACK-KSC, Order Granting Plaintiff's Motion for Summary Judgment on the Third Claim in the Complaint.