| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-00319 ACK-KSC |
| | ) |
| RONALD B. STATON, BRENDA STATON, | ) |
| NAVY FEDERAL CREDIT UNION, | ) |
| CAPSTEAD MORTGAGE CORPORATION, | ) |
| and STATE OF HAWAII, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER DENYING DEFENDANT BRENDA L. STATON'S MOTION FOR LEAVE TO FILE AN INTERLOCUTORY APPEAL

For the reasons discussed below, the Court DENIES Defendant Brenda Staton's Motion for Leave to File an Interlocutory Appeal.

### BACKGROUND

For purposes of the current motion, the Court discusses only those facts of particular relevance to Defendant Brenda Staton's ("Mrs. Staton") Motion for Leave to File an Interlocutory Appeal (the "Motion").[1]  ECF No. 297.

The Court issued an Order Granting Plaintiff's Motion for Summary Judgment on the Third Claim in the Complaint on August 31, 2015.  ECF No. 157.  That same day, the Court issued

---

[1] As the Court explained in its Minute Order entered March 21, 2018, ECF No. 299, the Court will construe Mrs. Staton's notice of appeal, ECF No. 297, as a motion to permit an interlocutory appeal under 28 U.S.C. § 1292.  E.g., In re Van Zandt, No. BR 12-03184-HLB, 2014 WL 1422973, at *1 (N.D. Cal. Apr. 11, 2014) ("The Court construes Debtor's notice of appeal . . . to be a motion for leave to appeal an interlocutory order.").

an Order of Foreclosure and Judicial Sale ("Foreclosure Order")
of the Staton's home (the "Residence").  ECF No. 158.  On
September 1, 2015, however, Defendant Ronald Staton ("Mr.
Staton") filed a petition for relief under 11 U.S.C. § 301 in
the United States Bankruptcy Court for the District of Hawaii.
ECF No. 160-1.  In view of Mr. Staton's bankruptcy petition, the
Court stayed this case.  ECF No. 161.  The court reinstated the
Foreclosure Order on December 7, 2015, in response to the
Bankruptcy Court's Order Granting United States' Motion for
Relief from Automatic Stay.  ECF No. 168.

On November 16, 2016, Mr. Staton filed a second
petition for relief under 11 U.S.C. § 301 in the United States
Bankruptcy Court for the District of Hawaii.  ECF No. 208.
Again, in view of Mr. Staton's bankruptcy petition, the Court
stayed this case.  ECF No. 209.  Mr. Staton's second petition
for relief under 11 U.S.C. § 301 was dismissed, however, and on
April 24, 2017, the Court reinstated its Foreclosure Order and
directed the parties to proceed in accordance therewith.  ECF
No. 212.

The day before the scheduled foreclosure sale auction,
on June 20, 2017, Mrs. Staton filed a petition for relief under
11 U.S.C. § 301 in the United States Bankruptcy Court for the
District of Hawaii.  ECF No. 214.  Based on Mrs. Staton's
bankruptcy petition, the Court stayed this case.  ECF No. 215.

The following month, on August 7, 2017, the Plaintiff United States (the "Government") filed a Motion for Relief from Automatic Stay in the Bankruptcy Court. The Bankruptcy Court entered an order on October 6, 2017, granting the Government's Motion for Relief from Automatic Stay. Accordingly, the Court unstayed this case and reinstated its Foreclosure Order, directing the parties to proceed in accordance therewith. ECF No. 219.

The foreclosure sale of the Residence was set for December 20, 2017. ECF No. 230. But on December 8, 2017, Mr. Staton filed an Emergency Motion to Strike Notice of Lis Pendens (NOPA), ECF No. 226, along with a Supplement to the Emergency Motion, ECF No. 227. Mr. Staton represented that he obtained financing in the amount of $1,032,000—sufficient to satisfy all liens on the property—with a closing date set for December 8, 2017. ECF No. 226. The Court held a hearing on this matter on December 11, 2017 and ordered the parties to have a settlement conference with Magistrate Judge Chang. ECF No. 234.

On December 18, 2017, Magistrate Judge Chang held the settlement conference, which he ended when the Statons could not produce a loan commitment from the lender for the above-described financing. ECF No. 244. The Statons filed an Emergency Motion Regarding Foreclosure and Request for a Hearing and Stay Pending Hearing later that day. ECF No. 241. And—

3

still on December 18, 2017—the Court held a hearing on the

Statons' motion, concluding that the foreclosure of the

Residence would proceed on December 20, 2017.  ECF No. 243.

The day before the foreclosure sale, on December 19,

2017, the Statons filed a Notice Re: Conditional Loan Approval

Letter and requested a stay of the foreclosure sale.[2]  ECF No.

245.  The Court held a hearing the morning of December 20, 2017

regarding the Statons' Notice.[3]  ECF No. 251.  The Court denied

the request for a stay and ordered the foreclosure sale to

proceed.  Id.

The foreclosure sale occurred on December 20, 2017

around 12:00pm on the steps of the United States District Court

for the District of Hawaii.  Following the foreclosure sale, on

December 21, 2017, the Commissioner filed a Notice of Sale,

informing the Court that the Residence was sold to a third-party

bidder one day earlier for $1,135,000.00, subject to

confirmation by the Court.  ECF No. 254.

---

[2] The conditional loan approval letter stated that the Residence was "[n]on-owner occupied" and that "the borrower's current intention is to rent the property."  ECF No. 245-1 at 1.

[3] At the December 20, 2017 hearing, factual circumstances were brought to the attention of the Statons' lender—who was in attendance at the hearing by telephone—which caused the lender to confirm that it could not provide a loan to the Statons.  ECF No. 262-1 at 3-4.  Specifically, Mrs. Staton disclosed at the hearing that she had formed a business entity for the purpose of obtaining business financing to pay down Mr. Staton's debts, which the Statons were claiming were "business debts."  Id.  Moreover, the issue of whether the Statons continued to reside in the Residence or instead intended to use it as an investment property or other business venture was discussed.  Id. at 4.  Because it became apparent that the Statons were seeking a loan for personal rather than business purposes, the lender withdrew its offer of conditional loan approval.  Id.

On December 21, 2017, however, the Government filed a Notice of Defendant Ronald Staton's Bankruptcy Case, which stated that: (1) Mr. Staton filed a new bankruptcy case on December 20, 2017 and (2) the Government intended to seek relief from the stay in that case so that the Commissioner's sale could be confirmed. ECF No. 253.

On December 22, 2017, Mrs. Staton filed a Notice of Pendency of Action ("notice of lis pendens"), asserting that she was contesting the validity of the foreclosure sale as having been filed in violation of Mr. Staton's bankruptcy, which she contended was filed at 11:54 a.m. before the foreclosure sale. ECF No. 255. She also asserted that the foreclosure sale failed "to protect defendant interests in the property." ECF No. 255 at 2. The Court entered a minute order on January 5, 2018, setting a hearing on Mrs. Staton's claim for January 31, 2018 and directing the parties to file briefs. ECF No. 258.

On January 17, 2018, the Statons filed a Brief in Support of Claim of Failure to Protect Defendant Interests in Real Property. ECF No. 260. On January 23, 2018, the United States filed a Memorandum in Response to the Statons' December 22, 2017 and January 17, 2018 briefs. ECF No. 261. On January 24, 2018, Defendants Navy Federal Credit Union and Capstead Mortgage Corporation (together, the "Lender Defendants") filed a Response to Brenda Staton's Brief in Support of Claim of Failure

to Protect Defendant Interests in Real Property.  ECF No. 262.

The Bankruptcy Court granted the Government's Motion for Relief from Automatic Stay on January 31, 2018, and applied the lifting of the stay retroactively to December 20, 2017. This Court continued the hearing on Mrs. Staton's claim originally scheduled for January 31, 2018 until February 16, 2018 because the Government: (1) did not seek a waiver of the 14-day stay provided under Fed. R. Bankr. P. 4001(a)(3) in Mr. Staton's bankruptcy case; and (2) failed to record the Bankruptcy Court's Order in Mrs. Staton's prior bankruptcy case granting relief from the stay, which provided for "'in rem' relief, i.e. this order is binding with respect to the subject property for 240 days after the date of the entry of this order in any other bankruptcy case that has been or may be filed."  ECF No. 268. The Government subsequently recorded the Bankruptcy Court's in rem Order with the Hawaii Bureau of Conveyances.  ECF No. 296 at 3 (citing ECF No. 294-1).

On February 12, 2018, Mr. Staton filed a Motion to Vacate, Alter, or Amend Order Granting Relief from Automatic Stay Retroactive to December 20, 2017 in the Bankruptcy Court. On February 15, 2018, the Bankruptcy Court denied this Motion. On that same date, Mr. Staton filed a Notice of Appeal of the Bankruptcy Court's Order and its subsequent denial of his Motion to Vacate, Alter, or Amend.

The Court held a hearing on February 16, 2018 (after expiration of the 14-day stay provided under Fed. R. Bankr. P. 4001(a)(3)) to consider Defendant Brenda Staton's assertion that there has been a failure "to protect defendant interests in the property." Following the February 16, 2018 hearing, the Court entered an Order Finding Defendant Brenda Staton's Claim that the Foreclosure Sale Fails to Protect Her Interest in the Property to be Without Merit (the "February 16, 2018 Order"). ECF No. 276.

On March 19, 2018, Mrs. Staton filed a notice of appeal, ECF No. 297, appealing from the Court's February 16, 2018 Order, ECF No 276. The Court entered a minute order on March 21, 2018, construing Mrs. Staton's notice of appeal as a motion for leave to file an interlocutory appeal, as well as setting a briefing schedule and hearing on the Motion. ECF No. 299. The Government filed its Opposition to the Motion on March 23, 2018, ECF No. 303, to which the Lender Defendants and Defendant State of Hawaii joined, ECF Nos. 304, 305. The Statons filed a Memorandum in Support of Brenda L. Staton's Motion to Certify Interlocutory Appeal ("Staton Mem.") on March 27, 2018. ECF No. 312. Lender Defendants then filed an opposition to Mrs. Staton's memorandum in support on March 29, 2018. ECF. No. 317.

Separately, on March 26, 2018, the Statons filed a

Motion for Continuance of Hearings Scheduled for March 29, 2018 and April 6, 2018. ECF No. 307. The Government filed an opposition on March 28, 2018. ECF No. 309.  By Minute Order entered March 28, 2018, the Court denied the Statons' motion for a continuance and directed that the hearings set for March 29, 2018, and April 6, 2018, would be held as scheduled.  ECF No. 311.  The Court, however, granted Mrs. Staton permission to appear at the March 29, 2018 hearing by telephone.  Id.  The Courtroom Manager contacted Mrs. Staton the day before the hearing to confirm these details and arrange Mrs. Staton's appearance by telephone.

The Court held a hearing on the Motion on March 29, 2018. Despite the Courtroom Manager's prior coordination with Mrs. Staton, she was unable to reach Mrs. Staton by telephone after several attempts.  ECF No. 318.  However, Mr. Staton, who appeared at the March 29, 2018 hearing in person, stated that he represented Mrs. Staton and would present their joint statement. Id.

**DISCUSSION**

The Statons contend that the February 16, 2018 Order is an "appealable interlocutory Order pursuant to 28 U.S.C. § 1292(a)(1)[.]"  Staton Mem. at 1-2.  They also claim that the Court should grant leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Id. at 2.  The Government,

Lender Defendants, and Defendant State of Hawaii oppose the Statons' Motion. See ECF Nos. 303 ("Pl.s Mem."), 304 ("Lender Def.'s Mem.'), 305 ("Haw. Mem."). The Court has reviewed the parties' arguments and addresses them in turn.

## I.   Interlocutory Review Under 28 U.S.C. § 1292(a)(1)

Under 28 U.S.C. § 1292(a)(1), the courts of appeals have jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions."  The Supreme Court has stated that an order may be appealable under section 1292(a)(1) if it has the "practical effect" of denying an injunction.  Carson v. American Brands, 450 U.S. 79, 83-84 (1981).

To determine whether an order has the practical effect of denying an injunction, courts "look to [the order's] substantial effect rather than its terminology."  Tagupa v. East-West Center, 642 F.2d 1127, 1129 (9th Cir. 1981) (citation omitted).  In so doing, courts have "construed the statute narrowly" because "§ 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule[.]"  Carson, 450 U.S. at 84.  Thus, even where an order has the practical effect of refusing an injunction, the Supreme Court has explained that "not all denials of injunctive relief are immediately appealable; a party seeking review also must show that the order

will have a 'serious, perhaps irreparable, consequence[.]'"
Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 379
(1987) (citation omitted).

The Court finds that § 1292(a)(1) is inapplicable here
because the February 16, 2018 Order did not have the practical
effect of refusing an injunction. The February 16, 2018 Order
resolved one claim in the Statons' December 22, 2017 notice of
lis pendens—that the foreclosure sale failed "to protect
defendant interest in the property"—but a notice of lis pendens
is neither an injunction nor a request for an injunction. The
Ninth Circuit analyzed in Orange County. v. Hongkong & Shanghai
Banking Corporation whether an order expunging a notice of lis
pendens has the practical effect of refusing an injunction. 52
F.3d 821, 825-27 (9th Cir. 1995) ("Orange"). The Court finds
the Orange court's analysis instructive here.

In Orange, the Ninth Circuit dismissed an appeal after
rejecting the appellants' argument that an order expunging a lis
pendens was appealable under § 1292(a)(1). The Orange court
first determined that a lis pendens is distinguishable from a
preliminary injunction. Id. at 825. The court reasoned that
while a "preliminary injunction absolutely forbids the relevant
parties from selling the subject property, and is backed by the
sanction of contempt . . . . [a] lis pendens, . . . does not
absolutely forbid the sale of the subject property." Id. The

10

recording of a lis pendens "simply serves to provide potential

purchasers constructive notice of the pending proceedings

ensuring that anyone who acquires an interest in the property

takes subject to any judgment that may be rendered therein."

Id. at 825 (citation and internal quotation marks omitted).

Significant here, the court next evaluated whether the

challenged order expunging the lis pendens had the practical

effect of granting or denying an injunction.  Id.  To make this

determination, the court first stated that "the three

fundamental characteristics of an injunction are that it is (1)

'directed to a party,' (2) 'enforceable by contempt,' and (3)

'designed to accord or protect some or all of the substantive

relief sought by a complaint' in more than preliminary fashion."

Id. at 825-26 (citations omitted).  Comparing a lis pendens

against this standard, the court reasoned that a lis pendens is

not injunctive because it "is neither directed at a party nor

enforceable by contempt."  Id. at 826.  The court emphasized

that, although "a lis pendens does attempt to protect the

substantive relief sought in the complaint . . . . the fact

[that it] does not compel a party to act or refrain from acting

under threat of contempt fundamentally distinguishes it from an

injunction."  Id.  Accordingly, the court held the order

expunging the lis pendens was necessarily not appealable under §

1292(a)(1) because did not have the practical effect of refusing

an injunction.  Id. at 827; see also Golden State Bank v. First-Citizens Bank & Tr. Co., 411 F. App'x 62 (9th Cir. 2011) (dismissing appeal from an order expunging a lis pendens, among other things, because the order "[wa]s not an order granting, modifying or denying a preliminary injunction [under]. . . . 28 U.S.C.A. § 1292(a)(1)"); Sanai v. Sanai, 141 F. App'x 677 (9th Cir. 2005) (holding that an order releasing a lis pendens was not appealable under § 1292(a)(1)").

Here, the February 16, 2018 Order was entered in response to a single claim within the Statons' notice of lis pendens.  Like the notice of lis pendens in Orange, the Statons' notice of lis pendens is neither a preliminary injunction nor a request for injunctive relief; rather, the notice of lis pendens by its terms simply gave notice that Mrs. Staton was contesting "the validity of [the foreclosure] sale as . . . failing to protect defendant interests in the property. . . . [and therefore] no transfer of title shall go forth pending this notice."  ECF No. 255 at 2.  Because the Statons' notice of lis pendens was not injunctive, the February 16, 2018 Order finding that Mrs. Staton's claims therein lacked merit did not have the practical effect of refusing an injunction.

The Court also notes that, even if Mrs. Staton were correct that "[a]n Order directing the sale or disposal of property . . . is the same thing as an Order" granting or

refusing an injunction, Staton Mem. at 1-2, that description does not fit the February 16, 2018 Order from which Mrs. Staton attempts to appeal. Rather, the Court directed the sale of the Residence in its August 31, 2015 Order of Foreclosure and Judicial Sale. ECF No. 158. The Order to which Mrs. Staton's current Motion relates decided only that the Statons' claim within their notice of lis pendens that the foreclosure sale failed to protect their interests in the property was without merit.

Because the February 16, 2018 Order did not have the practical effect of refusing an injunction, § 1292(a)(1) is inapplicable.

## II.  Interlocutory Review Under 28 U.S.C. § 1292(b)

The Statons also contend that the Court should permit them to file an interlocutory appeal under 28 U.S.C. § 1292(b). Courts have explained that a "movant seeking an interlocutory appeal [under 28 U.S.C. § 1292(b)] has a heavy burden to show that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978) (internal quotation marks omitted); see also James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) ("Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore

must be construed narrowly."); <u>Du Preez v. Banis</u>, No. CIV. 14-00171 LEK-RL, 2015 WL 857324, at *1 (D. Haw. Feb. 27, 2015) (collecting cases).  Certification for interlocutory appeal under § 1292(b) is only appropriate where: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation

### A. Whether the February 16, 2018 Order Involves a Controlling Question of Law

A question of law is controlling if the resolution of the issue on appeal could "materially affect the outcome of litigation in the district court."  <u>In re Cement Antitrust Litig.</u>, 673 F.2d 1020, 1026 (9th Cir. 1981).  A "question of law" under § 1292(b) means a "pure question of law" rather than a mixed question of law and fact or the application of law to a particular set of facts.[4]  <u>Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.</u>, No. 09-CV-320-HU, 2010 WL 952273, at *3 (D. Or. Mar. 10, 2010) (collecting cases); <u>see also</u> <u>McFarlin v. Conseco Servs., LLC</u>, 381 F.3d 1251, 1259 (11th Cir. 2004) (Section "1292(b) appeals were intended, and should be reserved,

---

[4] Questions of law appropriate for interlocutory appeal include, for example, "'the determination of who are necessary and proper parties, whether a court to which a cause has been transferred has jurisdiction, or whether state or federal law should be applied.'"  <u>In re Cement Antitrust Litig.</u>, 673 F.2d at 1026 (quoting <u>United States v. Woodbury</u>, 263 F.2d 784, 787 (9th Cir. 1959)).

for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts"); <u>Oliner v. Kontrabecki</u>, 305 B.R. 510, 529 (N.D. Cal. 2004) ("Because the alleged 'controlling questions of law' raised by Kontrabecki are inextricably intertwined with the bankruptcy court's factual findings, an interlocutory appeal is not appropriate."); <u>In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.</u>, 212 F. Supp. 2d 903, 907 (S.D. Ind. 2002) (stating that a question of law is one that presents an abstract legal issue that can be decided quickly and cleanly without having to study the record).

The Court finds that Mrs. Staton's supposed questions of law are not pure questions of law appropriate for interlocutory review. First, determining whether the foreclosure sale in this matter protected "defendant interests in the property" requires the application of law to this litigation's particular set of facts. The Court's February 16, 2018 Order makes this clear. In analyzing whether the foreclosure sale protected "defendant interests in the property," the Court applied the law to determine, among other issues, whether: (1) the successful bid at the foreclosure sale auction was adequate compared to a purported recent appraisal

the Statons claimed but did not support,[5] ECF No. 276 at 7-8; (2)

Mrs. Staton would only receive around $50,000 from the

foreclosure sale auction, id. at 9; and (3) the United States

frustrated the Statons' efforts to obtain loans when it refused

to lift its Notice of Pendency of Action notwithstanding the

Statons' failure to produce a loan commitment from any lender,

id. at 11.

The Court first notes that it has not yet confirmed

the foreclosure sale. The Court has announced that bidding will

be re-opened at the sale confirmation hearing, and the

Commissioner anticipates further bids. See ECF Nos. 285-1, 291.

Second, these issues do not present abstract legal questions.

Their resolution is inextricably intertwined with the facts of

this litigation, and the court of appeals would be required to

delve far beyond the surface of the record to review the

February 16, 2018 Order. Keystone Tobacco Co., Inc. v. United

States Tobacco Co., 217 F.R.D. 235, 239 (D.D.C.2003) ("Where the

---

[5] To the extent the Statons continue to argue that the successful bid falls
short of an alleged recent appraisal of the Residence, their claims are not
persuasive. E.g., Staton Mem. at 2. First, the Statons have failed to
provide any support for this supposed recent appraised value, which differs
significantly from the appraised value listed on a recent title report the
Government filed on March 15, 2018. See ECF No. 294-1. Moreover, any
arguments regarding the adequacy of the sale price must consider the Statons'
interactions with the Commissioner which made the pre-sale process more
difficult. E.g., ECF No. 270 ¶¶ 7-18. As the Court has explained, the
Statons' resistance may have decreased the amount of the bid. ECF No. 276 at
8 ("[I]n the past, the Statons did not always cooperate with the Commissioner
regarding pre-sale open houses held at the residence and their lack of
cooperation may be a reason that the auction price was not higher." (quoting
ECF No 261 at 4.)).

crux of an issue decided by the court is fact-dependent, the
court has not decided a 'controlling question of law' justifying
immediate appeal"); In re Bridgestone/Firestone, Inc. Tires
Prods. Liab. Litig., 212 F. Supp. 2d 903, 907 (S.D. Ind. 2002)
("A question of law in this situation is one that presents 'an
abstract legal issue' that can be 'decide[d] quickly and cleanly
without having to study the record'" (citation omitted)); Hulmes
v. Honda Motor Co., Ltd., 936 F. Supp. 195, 210 (D.N.J.1996),
aff'd 141 F.3d 1154, cert denied, 525 U.S. 81 (1998) ("Section
1292(b) was not designed to secure appellate review of factual
matters or of the application of the acknowledged law to the
facts of a particular case[.]" (internal quotation marks
omitted)).

The Statons also contend that a separate but related
controlling question of law exists: whether the Government could
properly enforce its federal tax liens against Mr. Staton
through foreclosure and sale of the Residence where the Statons
own the Residence as tenants by the entirety.  Staton Mem. at 2.
This Court has already resolved the propriety of the
Government's enforcement of its tax liens through foreclosure.

In its August 31, 2015 Order Granting Plaintiff's
Motion for Summary Judgment on the Third Claim in the Complaint,
ECF No. 157, the Court stated that "[s]pouses that own property
as tenants by the entirety under Hawaii law hold 'property' or

17

'rights to property' subject to liens under 26 U.S.C. § 6321."

ECF No. 157 at 16-17 (citing U.S. v. Lindsey, Civ. No. 11-00664 JMS-KSC, 2013 WL 3947757, at *5 (D. Haw. July 30, 2013)). The Court further explained:

> In order to enforce its tax liens, the Government is empowered, under 26 U.S.C. § 7403, to join all parties with an interest in the subject property and request a judicial sale of the property. United States v. Rodgers, 461, 677, 691-92 (1983) (citing 26 U.S.C. § 7403). The Government may seek the sale not only of the debtor's interest in the property, but the entire property held by the debtor and his spouse in a tenancy by the entirety. Id. at 693-94; see also In re Pletz, 221 F.3d 1114, 1118 (9th Cir. 2000). In such instances, the Court may order the sale of the entire property and compensate the nondebtor spouse for her ownership interest. Pletz, 221 F.3d at 1117 (citations omitted). Each spouse owns a fifty percent interest in property held as tenants by the entirety under Hawaii law. Lindsey, 2013 WL 3947757 at *6 n.3 (citations omitted); United States v. Webb, Civ. No. 07-00564 JMS-KSC, 2008 WL 4761745 * 6 n.12 (D. Haw. Oct. 23, 2008) (citations omitted) . . . The evidence shows that Ronald Staton and Brenda Staton purchased and own the Residence as tenants by the entirety, as reflected in the Agreement of Sale and Deed. Duffy Decl. ¶¶ 8-9, Exs. G, H, ECF Nos. 109-2, 109-4, 109-5.

> . . .

> Brenda Staton has an interest in the Residence that must be taken into account. According to the Title Report for the Residence, she and Ronald Staton own the Residence as tenants by the entirety. Title Report at 1, ECF No. 138-2. In this jurisdiction, a court may order the sale of

> the entire property under 26 U.S.C. § 7403
> and compensate a nondebtor spouse for her
> fifty percent interest from the sale
> proceeds. See Pletz, 221 F.3d at 1117;
> Lindsey, 2013 WL 3947757 at * 6 n.3
> (citations omitted); Webb, 2008 WL 4761745 *
> 6 n.12 (citations omitted).
>
> However, the Title Report also shows that
> Brenda and Ronald Staton are jointly liable
> on the Capstead mortgage for the Residence.
> See Title Report at 3, ECF No. 138-2. The
> uncontested amount owed under the Statons'
> mortgage is $294,708.82 as of July 31, 2015.
> See Capstead's Supp. Rpt. at 2, ECF No. 151;
> Sieber Affd. ¶ 5, ECF No. 156; Tr. 15:11-18.
>
> Accordingly, since the Court has determined
> that the Statons' Residence should be
> foreclosed and sold free and clear of all
> liens, including Capstead's senior mortgage,
> without objection from any party, the
> foreclosure of Capstead's mortgage
> necessarily includes Brenda Staton's one-
> half interest in the Residence.

ECF No. 157 at 17-18, 22-23; see also ECF No. 276 at 9-10.

Moreover, the Supreme Court has previously held that the federal

tax liens of one spouse may attach to property a married couple

owns as tenants by the entirety. United States v. Craft, 535

U.S. 274, 284 (2002) ("Excluding property from a federal tax

lien simply because the taxpayer does not have the power to

unilaterally alienate it would . . . exempt a rather large

amount of what is commonly thought of as property.").

Moreover, Hawaii law required that the Lender

Defendants, as senior lienholders, be made parties to this

action. Hawaii Revised Statutes § 667-2 mandates that:

19

> All prior and subsequent mortgage creditors,
> whose names are or can be discovered by the
> party foreclosing a mortgage, shall be made
> parties to the action.

See also Fed. R. Civ. P. 19(a)(1)(A)-(B)(ii). As explained above, Mrs. Staton was jointly and severally liable on the Capstead mortgage, and the inclusion of the foreclosure of the mortgage is thoroughly set forth in the Order Granting Plaintiff's Motion for Summary Judgment on the Third Claim in the Complaint, ECF No. 157, and the Order of Foreclosure and Judicial Sale, ECF No. 158, both filed on August 31, 2015. Lender Defendants have never objected to the foreclosure of the Residence in this action. E.g., ECF 157 at 22 n.10 ("[A]s noted above, the parties in this case have not objected to a sale of the Residence free and clear of all liens."). Under these circumstances, the fact that the Statons own the Residence as tenants by the entirety does not give rise to a pure question of law as to Mrs. Staton's rights in the Residence.

Because the February 16, 2018 Order does not involve a controlling question of law for purposes of § 1292(b), an interlocutory appeal is inappropriate.

### B. Whether a Substantial Ground for Difference of Opinion Exists

Further, Mrs. Staton's disagreement with the February 16, 2018 Order is not sufficient to satisfy § 1292's second element—that a "substantial ground for a difference of opinion

exists" on the disputed question of law.  There is a
"substantial ground for difference of opinion" if "there is a
genuine dispute <u>over the question of law</u> that is the subject of
the appeal."  <u>In re Cement Antitrust Litig.</u>, 673 F.2d at 1026
(emphasis added); <u>see also</u> <u>Couch v. Telescope, Inc.</u>, 611 F.3d
629, 633 (9th Cir. 2010) ("To determine if a substantial ground
for difference of opinion exists under § 1292(b), courts must
examine to what extent the controlling law is unclear.").  Such
a dispute exists, for example, if the circuits are in
disagreement and the court of appeals in which the district
court sits has not decided the issue, the issue involves
complicated questions of foreign law, or the issue is a novel
and difficult one of first impression.  <u>Couch</u>, 611 F.3d at 633.
"However, just because a court is the first to rule on a
particular question or just because counsel contends that one
precedent rather than another is controlling does not mean" that
sufficient grounds exist.  <u>Id.</u>  Said differently, "[a] party's
strong disagreement with the Court's ruling is not sufficient
for there to be a 'substantial ground for difference'; the
proponent of an appeal must make some greater showing."
<u>Kowalski v. Anova Food, LLC</u>, 958 F. Supp. 2d 1147, 1154 (D. Haw.
2013) (citation omitted); <u>see also</u> <u>First Am. Corp. v. Al-Nahyan</u>,
948 F. Supp. 1107, 1116 (D.D.C. 1996) ("Mere disagreement, even
if vehement, with a court's ruling on a motion . . . does not

establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal.").

The Statons have not shown that a substantial ground for a difference of opinion exists here. In the February 16, 2018 Order, the Court addressed and refuted the five bases for Mrs. Staton's claim that the foreclosure sale failed to protect "defendant interests in the property." ECF No. 276 at 7-12. For example, whether Mrs. Staton will receive closer to $50,000 or $300,000 or more from the foreclosure sale proceeds requires that the Court make a mathematical calculation rather than a complicated legal analysis. Id. at 10-11.

In addition, there is no substantial ground for a difference of opinion regarding the Government's ability to enforce its tax liens against Mr. Staton through foreclosure and sale of the Residence. See cases cited supra at 18-19. Indeed, the Statons do not cite conflicting or inconsistent authority on the issue or bring to the Court's attention a circuit split. See Couch, 611 F.3d at 633. Rather, the Statons simply state that the Court's February 16, 2018 Order was wrong. Staton Mem. at 2. But the law the Court applied in its August 31, 2015 Order Granting Plaintiff's Motion for Summary Judgment on the Third Claim in the Complaint, which it restated in the February 16, 2018 Order, is clear and well grounded. And of course, Mrs.

Staton is jointly and severally liable under the Lender Defendants' mortgage, which is necessarily joined to this action and is being foreclosed.

Finally, even putting aside these considerations, absent a controlling question of law, the Statons cannot take the first step toward showing that any "substantial ground for a difference of opinion" exists over the question of law at issue. See In re Cement Antitrust Litig., 673 F.2d at 1026; Couch, 611 F.3d at 633.

## C. Whether the Proposed Interlocutory Appeal Will Materially Advance the Ultimate Termination of the Litigation

Finally, granting leave for the Statons to file an interlocutory appeal would materially delay this litigation. A district court generally should not permit an interlocutory appeal where doing so would prolong litigation rather than advance its resolution. Fenters v. Yosemite Chevron, 761 F. Supp. 2d 957, 1005 (E.D. Cal. 2011). Courts within the Ninth Circuit have held that resolution of a question materially advances the termination of litigation if it "facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later [in order to] save the courts and the litigants unnecessary trouble and expense." See United States v. Adam Bros. Farming, Inc., 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004); see also In re Cement

Antitrust Litig., 673 F.2d at 1026 (stating that § 1292(b) is used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation").

After nearly six years of litigation in this matter, it needs to proceed toward its ultimate resolution as expeditiously as possible. While reaching the correct resolution is of paramount importance, this matter has been marred by delay, with the Statons continuing to challenge the foreclosure sale proceedings in this Court and the United States Bankruptcy Court. See Pl.'s Mem. at 4; Lender Def.'s Mem. at 3. A piecemeal appeal at this juncture likely would not promote the efficient resolution of this matter; rather, it would further delay an already protracted litigation. Accordingly, Mrs. Staton cannot satisfy the prerequisites of § 1292(b) and her motion for leave to file an interlocutory appeal is denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES Mrs. Staton's Motion for Leave to File an Interlocutory Appeal.

IT IS SO ORDERED.

<u>DATED</u>: Honolulu, Hawaii, April 3, 2018



Alan C. Kay
Sr. United States District Judge

<u>United States v. Staton, et al.</u>, Civ. No. 12-00319 ACK-KSC, Order Denying
Defendant Brenda L. Staton's Motion for Leave to File an Interlocutory
Appeal.