IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-00319 ACK-KSC |
| | ) |
| RONALD B. STATON, BRENDA STATON, | ) |
| NAVY FEDERAL CREDIT UNION, | ) |
| CAPSTEAD MORTGAGE CORPORATION, | ) |
| and STATE OF HAWAII, | ) |
| | ) |
| Defendants. | ) |
| | ) |

ORDER DENYING DEFENDANTS RONALD AND BRENDA STATONS'
MOTION FOR LEAVE TO FILE AN INTERLOCUTORY APPEAL

For the reasons discussed below, the Court DENIES
Defendants Ronald and Brenda Statons' Motion for Leave to File
an Interlocutory Appeal.

BACKGROUND

For purposes of the current motion, the Court
discusses only those facts relevant to Defendants Ronald ("Mr.
Staton") and Brenda ("Mrs. Staton" and together with Mr. Staton,
the "Statons") Statons' Motion for Leave to File an
Interlocutory Appeal (the "Motion").[1] ECF No. 328. A more
complete recitation of this case's extensive factual background

---

[1] As the Court explained in its Minute Order entered April 10, 2018, ECF No.
329, the Court will construe the Statons' notice of appeal, ECF No. 328, as a
motion to permit an interlocutory appeal under 28 U.S.C. § 1292. E.g., In re
Van Zandt, No. BR 12-03184-HLB, 2014 WL 1422973, at *1 (N.D. Cal. Apr. 11,
2014) ("The Court construes Debtor's notice of appeal . . . to be a motion
for leave to appeal an interlocutory order.").

1

can be found in the Court's prior Order Confirming Sale, Approving Commissioner's Report, and Determining Order of Priority for Future Disbursements (the "April 10, 2018 Order"). ECF No. 330.

On December 29, 2014, Plaintiff United States (the "Government") filed a Motion for Summary Judgment on the Third Claim in the Complaint. ECF No. 109. The motion requested that the Government's federal tax liens and judgments be foreclosed and that the Statons' home (the "Residence") be sold free and clear of all liens pursuant to the terms of the Government's Proposed Order of Foreclosure and Judicial Sale. Id.; see also ECF No. 109-1. The motion further requested that the proceeds of the foreclosure sale first be applied to the costs of sale and any outstanding property taxes on the Residence, and thereafter be distributed among the parties through a stipulation or order of the Court. ECF No. 109.

The Court issued an order granting the Government's Motion for Summary Judgment on the Third Claim in the Complaint on August 31, 2015, ECF No. 157 ("August 31, 2015 Order"), which thoroughly set forth why the inclusion of the foreclosure of Defendants Capstead Mortgage Corporation ("Capstead") and Navy Federal Credit Union's ("NFCU" and together with Capstead, the "Lender Defendants") mortgage was proper, id. at 16-23. That same day, the Court issued an Order of Foreclosure and Judicial

Sale ("Foreclosure Order") of the Residence, ordering that the Residence be sold free and clear of all liens, including Lender Defendants' mortgage.  ECF No. 158.

On September 1, 2015, however, Mr. Staton filed a petition for relief under 11 U.S.C. § 301 in the United States Bankruptcy Court for the District of Hawaii.  ECF No. 160-1.  In view of Mr. Staton's bankruptcy petition, the Court stayed this case.  ECF No. 161.  The Court reinstated the Foreclosure Order on December 7, 2015, in response to the Bankruptcy Court's Order Granting United States' Motion for Relief from Automatic Stay.  ECF No. 168.

On November 16, 2016, Mr. Staton filed a second petition for relief under 11 U.S.C. § 301 in the United States Bankruptcy Court for the District of Hawaii.  ECF No. 208.  Again, in view of Mr. Staton's bankruptcy petition, the Court stayed this case.  ECF No. 209.  Mr. Staton's second petition for relief under 11 U.S.C. § 301 was dismissed, however, and on April 24, 2017, the Court reinstated its Foreclosure Order and directed the parties to proceed in accordance therewith.  ECF No. 212.

The day before the scheduled foreclosure sale auction, on June 20, 2017, Mrs. Staton filed a petition for relief under 11 U.S.C. § 301 in the United States Bankruptcy Court for the

District of Hawaii. ECF No. 214. Based on Mrs. Staton's bankruptcy petition, the Court stayed this case. ECF No. 215.

The following month, on August 7, 2017, the Government filed a Motion for Relief from Automatic Stay in the Bankruptcy Court. The Bankruptcy Court entered an order on October 6, 2017, granting the Government's Motion for Relief from Automatic Stay. Accordingly, the Court unstayed this case and reinstated its Foreclosure Order, directing the parties to proceed in accordance therewith. ECF No. 219.

The foreclosure sale of the Residence was set for December 20, 2017. ECF No. 230. But on December 8, 2017, Mr. Staton filed an Emergency Motion to Strike Notice of Lis Pendens (NOPA), ECF No. 226, along with a Supplement to the Emergency Motion, ECF No. 227. Mr. Staton represented that he obtained financing in the amount of $1,032,000—sufficient to satisfy all liens on the property—with a closing date set for December 8, 2017. ECF No. 226. The Court held a hearing on this matter on December 11, 2017 and ordered the parties to have a settlement conference with Magistrate Judge Chang. ECF No. 234.

On December 18, 2017, Magistrate Judge Chang held the settlement conference, which he ended when the Statons could not produce a loan commitment from the lender for the above-described financing. ECF No. 244. The Statons filed an Emergency Motion Regarding Foreclosure and Request for a Hearing

and Stay Pending Hearing later that day. ECF No. 241. And—

still on December 18, 2017—the Court held a hearing on the

Statons' motion, concluding that once again the Statons failed

to obtain a loan commitment which would pay off all the liens on

the Residence and that the foreclosure of the Residence would

proceed on December 20, 2017. ECF No. 243.

The day before the foreclosure sale, on December 19,

2017, the Statons filed a Notice Re: Conditional Loan Approval

Letter and requested a stay of the foreclosure sale.[2] ECF No.

245. The Court held a hearing the morning of December 20, 2017

regarding the Statons' Notice,[3] at which the Court denied the

Statons' request for a stay and ordered the foreclosure sale to

proceed. ECF No. 251.

The foreclosure sale occurred on December 20, 2017

around 12:00 p.m. on the steps of the United States District

Court for the District of Hawaii. Following the foreclosure

sale, on December 21, 2017, the Commissioner filed a Notice of

---

[2] The conditional loan approval letter stated that the Residence was "[n]on-owner occupied" and that "the borrower's current intention is to rent the property." ECF No. 245-1 at 1.

[3] At the December 20, 2017 hearing, factual circumstances were brought to the attention of the Statons' potential lender—who was in attendance by telephone—which caused the lender to confirm that it could not provide a loan to the Statons. ECF No. 262-1 at 3-4. Specifically, Mrs. Staton disclosed at the hearing that she had formed a business entity for the purpose of obtaining business financing to pay down Mr. Staton's debts, which the Statons were claiming were "business debts." Id. Moreover, the issue of whether the Statons continued to reside in the Residence or instead intended to use it as an investment property or other business venture was discussed. Id. at 4. Because it became apparent that the Statons were seeking a loan for personal rather than business purposes, the lender withdrew its offer of conditional loan approval. Id.

Sale, informing the Court that the Residence was sold one day earlier for $1,135,000.00, subject to confirmation by the Court. ECF No. 254.

On December 21, 2017, however, the Government filed a Notice of Defendant Ronald Staton's Bankruptcy Case, which stated that: (1) Mr. Staton filed a new bankruptcy case on December 20, 2017 and (2) the Government intended to seek relief from the stay in that case so that the Commissioner's sale could be confirmed. ECF No. 253.

On December 22, 2017, Mrs. Staton filed a notice of lis pendens, asserting that she was contesting the validity of the foreclosure sale as having been filed in violation of Mr. Staton's bankruptcy, which she contended was filed at 11:54 a.m. before the foreclosure sale. ECF No. 255. She also asserted that the foreclosure sale failed "to protect defendant interests in the property." ECF No. 255 at 2. The Court entered a minute order on January 5, 2018, setting a hearing on Mrs. Staton's claim for January 31, 2018 and directing the parties to file briefs. ECF No. 258.

The Bankruptcy Court granted the Government's Motion for Relief from Automatic Stay on January 31, 2018, and applied the lifting of the stay retroactively to December 20, 2017.[4]

---

[4] On February 26, 2018, Lender Defendants moved in the Bankruptcy Court for relief from the automatic and codebtor stay, nunc pro tunc. On April 4, (continued . . . .)

This Court continued the hearing on Mrs. Staton's claim originally scheduled for January 31, 2018 until February 16, 2018 because the Government: (1) did not seek a waiver of the 14-day stay provided under Fed. R. Bankr. P. 4001(a)(3) in Mr. Staton's bankruptcy case; and (2) failed to record the Bankruptcy Court's Order in Mrs. Staton's prior bankruptcy case granting relief from the stay, which provided for "'in rem' relief, i.e. this order is binding with respect to the subject property for 240 days after the date of the entry of this order in any other bankruptcy case that has been or may be filed." ECF No. 268. The Government subsequently recorded the Bankruptcy Court's in rem Order with the Hawaii Bureau of Conveyances. ECF No. 296 at 3 (citing ECF No. 294-1).

On February 12, 2018, Mr. Staton filed a Motion to Vacate, Alter, or Amend Order Granting Relief from Automatic Stay Retroactive to December 20, 2017 in the Bankruptcy Court. On February 15, 2018, the Bankruptcy Court denied this Motion. That same day, Mr. Staton filed a Notice of Appeal of the Bankruptcy Court's Order and its subsequent denial of his Motion to Vacate, Alter, or Amend.

The Court held a hearing on February 16, 2018 (after expiration of the 14-day stay provided under Fed. R. Bankr. P.

(continued . . . .)
2018, the Bankruptcy Court granted Lender Defendants' motion and applied the lifting of the stay retroactively to December 20, 2017.

4001(a)(3)) to consider Defendant Brenda Staton's assertion that there has been a failure "to protect defendant interests in the property."  Following the February 16, 2018 hearing, the Court entered an Order Finding Defendant Brenda Staton's Claim that the Foreclosure Sale Fails to Protect Her Interest in the Property to be Without Merit.  ECF No. 276.

The Court also entered a minute order on February 16, 2018, setting a briefing schedule and hearing dates on the issues of whether the foreclosure sale should be confirmed, the order of priority, and the disbursement of the foreclosure sale proceeds.  ECF No. 275.

On March 19, 2018, Mrs. Staton filed a notice of appeal, ECF No. 297, appealing from the Court's February 16, 2018 Order, ECF No 276.  The Court entered a minute order on March 21, 2018, construing Mrs. Staton's notice of appeal as a motion for leave to file an interlocutory appeal, as well as setting a briefing schedule and hearing on the motion.  ECF No. 299.  The Government filed its Opposition on March 23, 2018, ECF No. 303, to which the Lender Defendants and Defendant State of Hawaii joined, ECF Nos. 304, 305.  The Statons filed a Memorandum in Support of Brenda L. Staton's Motion to Certify Interlocutory Appeal on March 27, 2018.  ECF No. 312.  Lender Defendants filed an opposition to Mrs. Staton's memorandum on March 29, 2018.  ECF. No. 317.

In light of Mrs. Staton's notice of appeal, the minute order entered on March 21, 2018 also stated that the hearing on whether the foreclosure sale should be confirmed (originally scheduled for March 23, 2018, ECF No. 275) would be combined with the hearing on the issues of priority and disbursement of the foreclosure sale proceeds. ECF No. 299. The Court set the combined hearing for Friday, April 6, 2018. Id.

On March 26, 2018, however, the Statons filed a Motion for Continuance of Hearings Scheduled for March 29, 2018 and April 6, 2018. ECF No. 307. The Government filed an opposition on March 28, 2018, ECF No. 309, to which Lender Defendants joined, ECF No. 314. The Court entered a minute order on March 28, 2018, denying the Statons' motion for a continuance and directing that the hearings set for March 29, 2018, and April 6, 2018, would be held as scheduled. ECF No. 311. The Court granted Mrs. Staton permission to appear at the March 29, 2018 and April 6, 2018 hearing by telephone. Id.; ECF No. 322. The Courtroom Manager contacted Mrs. Staton the day before the March 29, 2018 hearing to confirm these details and arrange Mrs. Staton's appearance by telephone.[5]

---

[5] On March 28, 2018, Mr. Staton filed an Emergency Motion for Stay Pending Appeal with the United States Bankruptcy Court Appellate Panel for the Ninth Circuit. Mr. Staton's motion requested an order staying the foreclosure of the Residence pending resolution of his February 15, 2018 appeal of the (continued . . . .)

On March 29, 2018, the Court held the hearing on Mrs. Staton's motion for leave to file an interlocutory appeal. Despite the Courtroom Manager's prior coordination with Mrs. Staton, she was unable to reach Mrs. Staton by telephone after several attempts. ECF No. 318. However, Mr. Staton, who appeared at the March 29, 2018 hearing in person, stated that he represented Mrs. Staton and would present their joint statement. Id. On April 3, 2018, the Court issued a written order denying Mrs. Staton's motion for leave to file an interlocutory appeal (the "April 3, 2018 Order"). ECF No. 321.

Pursuant to the minute order entered on March 21, 2018, ECF No. 299, the Court held a hearing on April 6, 2018 on whether the foreclosure sale should be confirmed, the Commissioner's Report approved, and the issues of priority and disbursement of the foreclosure sale proceeds. ECF No. 327. Mr. Staton appeared at the hearing in person, while Mrs. Staton appeared by telephone. At the conclusion of the April 6, 2018 hearing, the Court announced that it would enter a written order granting the Government's Motion for an Order Confirming Sale, Approving Commissioner's Report and Distributing Proceeds to the extent that it would: (1) confirm the sale; (2) approve the

_____

(continued . . . .)
Bankruptcy Court's Order Granting Relief from Automatic Stay Retroactive to December 20, 2017 and subsequent denial of his Motion to Vacate, Alter, or Amend.

Commissioner's Report; and (3) approve the Government's proposed order of priority for future disbursements. See ECF No. 327.

The Court also stated that it would reserve consideration of the disbursement of sale proceeds pending the resolution of several outstanding issues, including the determination of: (1) the reasonable amount of attorneys' fees and costs to which the Lender Defendants are entitled, which has been referred to Magistrate Judge Kevin Chang for a Findings and Recommendation; and (2) the amount of accrued interest and any penalties to which the Government is entitled. Id. The Court announced that it would rule on the ultimate amount of sale proceeds to be distributed to each party, and order the appropriate distribution, following a separate hearing. Id.

Hours after the April 6, 2018 hearing, the Statons filed a hand-written notice of appeal. ECF No. 328. The notice of appeal cited no statutory or legal authority and appealed from the Court's "Order Confirming Sale, Approving Commissioner's Report and Distributing Proceeds. . . ." Id.[6]

On April 10, 2016, the Court entered a minute order stating that it would construe the Statons' April 6, 2018 notice of appeal as a motion to permit an interlocutory appeal under 28

---

[6] Although the Court assumes that the Statons' Motion requests permission to appeal from the written order issued April 10, 2018, ECF No. 330, the analysis herein applies equally to the minute order entered on April 6, 2018, which announced the Court's decision and stated that a written order would follow, ECF No. 327.

U.S.C. § 1292.  ECF No. 329.  The minute order scheduled a

hearing on the motion for Wednesday, April 18, 2018, and

directed the parties to file any memoranda in support or

opposition by Friday, April 13, 2018.  <u>Id.</u>

That same day, on April 10, 2018, the Court issued an

Order Confirming Sale, Approving Commissioner's Report, and

Determining Order of Priority for Future Disbursements.  April

10, 2018 Order, ECF No. 330.  In the April 10, 2018 Order, the

Court explicitly "reserve[d] jurisdiction to address any

appropriate issues that remain, including [(1) the reasonable

attorneys' fees and costs to which Lender Defendants' are

entitled and (2) the accrued interest and any penalties to which

the Government is entitled], as well as the possible entry of a

deficiency judgment in favor of" the Government.  <u>Id.</u> at 28.

The April 10, 2018 Order also stated, among other things, that

it was "not a final judgment pursuant to Rule 54 of the Federal

Rules of Civil Procedure."  <u>Id.</u>

### Special Considerations for Pro Se Litigants

The Court reiterates that, notwithstanding that it

appears the Statons have received advice from an undisclosed

attorney during the course of this proceeding, the Court has

nevertheless treated the Statons as pro se parties and analyzed

their position as being pro se.  The Ninth Circuit has explained

that pro se pleadings and briefs are to be construed liberally.

<u>Balisteri v. Pacifica Police Dep't.</u>, 901 F.2d 696 (9th Cir.

1990).  When pro se litigants technically violate a rule, the

court should act with leniency toward them.  <u>Motoyama v. Haw.

Dep't of Transp.</u>, 864 F. Supp. 2d 965, 975 (D. Haw. 2012);

<u>Draper v. Coombs</u>, 792 F.2d 915, 924 (9th Cir. 1986).  Pro se

litigants, however, must follow the same rules of procedure that

govern other litigants.  <u>Motoyama</u>, 864 F. Supp. 2d at 975.

## DISCUSSION

The Statons submitted a memorandum in support of their

motion on April 13, 2018.  ECF No. 339 ("Staton Mem.").  They

first argue that their appeal, though interlocutory in nature,

should be certified "because it falls under the small group of

orders permissible under the collateral order doctrine . . . ."

Staton Mem. at 1-2.  Second, they contend that the April 10,

2018 Order is an appealable interlocutory order pursuant to 28

U.S.C. § 1292(a)(1).  <u>Id.</u> at 3.  Third, they request that the

Court grant leave to file an interlocutory appeal pursuant to 28

U.S.C. § 1292(b).  <u>Id.</u> at 2-3.[7]  The Government and Lender

Defendants filed memoranda in opposition to the Statons' motion,

---

[7] The Statons also contend that the decision to confirm the sale should be
certified to the Ninth Circuit as an appealable order under Federal Rule of
Civil Procedure 54(b).  Staton Mem. at 3. The April 10, 2018 Order stated
that it was "not a final judgment pursuant to Rule 54 of the Federal Rules of
Civil Procedure" and did not enter judgment as to any party.  April 10, 2018
Order at 28 ¶ 17.  Accordingly, the Court will not "direct entry of a final
judgment as to one or more, but fewer than all, claims or parties" and has
not has not "expressly determine[d] that there is no just reason for delay."
Fed. R. Civ. P. 54(b).

and Defendant State of Hawaii filed a joinder to the Government's opposition. See ECF Nos. 335 ("Pl.'s Mem."), 336 ("Lender Def.'s Mem."), 337 ("Haw. Joinder"). The Court has reviewed the parties' arguments and addresses them in turn.

## I.  Collateral Order Doctrine

The Statons first contend that their appeal is "permissible under the collateral order doctrine . . . ." Staton Mem. 1-2. Pursuant to 28 U.S.C. § 1291, courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." A final decision is generally one "by which a district court disassociates itself from a case." Swint v. Chambers Cty. Comm'n, 514 U.S. 35, 42 (1995). Courts give § 1291 a "practical rather than a technical construction," however, under which the statute encompasses not only judgments that "terminate an action," but also a "small class" of collateral orders that, although they do not terminate the litigation, are appropriately deemed "final." Cohen v. Beneficial Loan Group, 337 U.S. 541, 545-46 (1949); Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106 (2009). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." Swint, 514 U.S., at 42; see also United States v. Hitchcock, 992 F.2d 236, 238 (9th Cir. 1993)

("The collateral-order doctrine . . . permits immediate appeal of decisions which (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) are effectively unreviewable on appeal from a final judgment.").

The Supreme Court has cautioned that the collateral order doctrine must "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868 (1994) (citation omitted). This approach is merited because "permitting piecemeal, prejudgment appeals, . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." Mohawk Indus., Inc., 558 U.S. at 106 (citations and internal quotation marks omitted). Accordingly, the justification for immediate appeal must be strong to overcome the usual benefits of deferring appeal until litigation concludes.[8]

---

[8] This requirement is embedded in two of the three traditional collateral order doctrine requirements. Mohawk Indus., Inc., 558 U.S. at 107. The second requirement, for example, insists upon "important questions separate from the merits." Swint, 514 U.S. at 42. In addition, "the third Cohen [requirement], whether a right is 'adequately vindicable' or 'effectively reviewable,' simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 878-79 (1994). The Supreme Court has thus explained that the (continued . . . .)

In light of these considerations, the Court finds that the April 10, 2018 Order is not appealable under the collateral order doctrine. Several factors guide the Court's determination. The Statons contend that the April 10, 2018 is conclusive because it establishes Mr. Staton's tax liabilities "for the years in question." Staton Mem. at 2. The April 10, 2018 Order, however, did no such thing. Rather, Mr. Staton's outstanding tax liabilities reduced to judgment were the subject of two stipulations between Mr. Staton and the Government in 2014. See ECF No. 157 at 7-8. As the August 31, 2015 Order explained:

> On September 30, 2014, pursuant to a stipulation filed by Plaintiff and Ronald Staton, the Court entered judgment against Mr. Staton with respect to his 2001, 2002, 2003, and 2005 income tax liabilities. ECF No. 104. . . . On November 25, 2014, pursuant to another stipulation filed by Plaintiff and Ronald Staton, the Court entered judgment against Mr. Staton with respect to his remaining 2004, 2006, and 2007 income tax liabilities at issue in the Complaint. ECF No. 108. . . . Mr. Staton's total outstanding liability reduced to judgment is therefore $355,526.74 . . . .

ECF No. 157 at 7.

---

(continued . . . .)
assertion that waiting until final judgment "may burden litigants in ways that are only imperfectly reparable by appellate reversal . . . has never sufficed." Id. at 872. "Instead, the decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." Mohawk Indus., Inc., 558 U.S. at 107.

It is perhaps no coincidence that the Statons' own memorandum relies upon the August 31, 2015 Order to argue that the April 10, 2018 Order is conclusive on this topic. Their memorandum states:

> [T]he Order confirming the sale (and the Order granting summary judgment with the right to foreclosure on the property[)] . . . is an appealable Order although it may be considered interlocutory in nature. The confirmation of the sale by the U.S. District Court (and the Order granting summary judgment) has conclusively established Defendant Ronald Staton's tax liability to United States Internal revenue [sic] Service . . . for the years in question.

Id. (emphasis added). The Statons' argument thus implicitly acknowledges that the April 10, 2018 Order did not establish Mr. Staton's tax liabilities and "may be considered" interlocutory in nature.

In addition, to the extent the Statons rely upon Citicorp Real Estate, Inc. v. Smith, 155 F.3d 1097 (9th Cir. 1998)("Citicorp") to argue that the April 10, 2018 Order is "conclusive" under the collateral order doctrine (or a final order), the Court finds that case distinguishable. In Citicorp, the Ninth Circuit held that certain foreclosure judgments, "as written, [we]re final decisions appealable within the meaning of 28 U.S.C. § 1291." Id. at 1101. In determining that the foreclosure judgments were final, however, the court emphasized

that they "conclusively establish [the Defendant]'s liability
for the defaulted loans (including a quantified amount of
principal, interest, and reasonable attorney's fees)." Id. The
court also reasoned that the foreclosure judgements were final
because the "district court retained jurisdiction for the sole
purpose of holding the Defendants personally liable for any
deficiency judgment remaining after the judicial foreclosure
sales." Id.

Here, the April 10, 2018 Order does not resemble the
foreclosure orders in Citicorp. First, as explained above, the
April 10, 2018 Order did not "conclusively establish" Mr.
Staton's tax liabilities. Mr. Staton's 2014 stipulations with
the Government established these liabilities, as explained in
the August 31, 2015 Order. Even if the April 10, 2018 Order had
established Mr. Staton's liability, moreover, it explicitly
reserved judgment on the amount of accrued interest and any
penalties to which the Government is entitled. April 10, 2018
Order at 26 ¶ 13 ("The Court will schedule a hearing on the
amount of accrued interest and any penalties to which Plaintiff
United States is entitled in conjunction with said judgments.
Plaintiff United States is directed to file a clarification of
the penalties and interest it is seeking to recover from Mr.
Staton at least fourteen (14) days before the hearing.").

Second, neither the August 31, 2015 Order, nor the

April 10, 2018 Order from which the Statons attempt to appeal,
conclusively established the amounts due for any parties'
reasonable attorneys' fees and costs. In contrast, the April
10, 2018 Order explained that "[t]he Court has referred to
Magistrate Judge Kevin Chang the determination of the attorneys'
fees and costs to which the Lender Defendants are entitled, . .
. and the Court reserves consideration on that issue until after
the issuance of Magistrate Judge Chang's Findings and
Recommendation." Id. at 26 ¶ 12. The "quantified amount of . .
. reasonable attorney's fees" in the foreclosure orders that
contributed to the Citicorp court's analysis, 155 F.3d at 1101,
is therefore lacking in the April 10, 2018 Order.

Third, the April 10, 2018 Order did not retain
"jurisdiction for the sole purpose of holding the Defendants
personally liable for any deficiency judgment remaining after
the judicial foreclosure sales." Id. (emphasis added). In
contrast, the April 10, 2018 Order retained jurisdiction "to
address any appropriate issues that remain, including [(1) the
reasonable attorneys' fees and costs to which Lender Defendants'
are entitled and (2) the accrued interest and any penalties to
which the Government is entitled], as well as the possible entry
of a deficiency judgment in favor of" the Government. April 10,
2018 Order at 28 ¶ 16.

Finally, the April 10, 2018 Order did not conclusively

establish a quantified amount due to any party except the Commissioner. E.g., Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 744 (1976) ("[W]here assessment of damages or awarding of other relief remains to be resolved [courts] have never . . . considered [an order] to be 'final' within the meaning of 28 U.S.C. § 1291."); HSBC Bank USA, N.A. v. Townsend, 793 F.3d 771, 776 (7th Cir. 2015) ("Damages are part of the judgment and essential to finality; lack of quantified damages prevents an appeal."). Even as to Mrs. Staton, the Court found only that Mrs. Staton is entitled to fifty percent of the remaining proceeds of the sale following distributions to the Commissioner and Defendant Capstead (in an amount not yet determined). Id. at 27 ¶ 14C.

Significantly, Mrs. Staton's share will be affected by the future determinations set forth above—namely, determinations of the reasonable attorneys' fees and costs to which Lender Defendants' are entitled, and the accrued interest and any penalties to which the Government is entitled. These future determinations will also affect whether a deficiency judgment in the Government's favor is even necessary, and if so, in what amount. In sum, and unlike in Citicorp, there are several undecided matters that weigh against finding the April 10, 2018 Order final or conclusive. The April 10, 2018 Order was not one by which this Court "disassociate[ed] itself from [this] case."

<u>Swint</u>, 514 U.S. at 42.

Even if the April 10, 2018 Order were conclusive, however, the Court finds that it did not "resolve an important issue <u>completely separate</u> from the merits of the action." <u>Hitchcock</u>, 992 F.2d at 238 (emphasis added). Rather, the April 10, 2018 Order involved "considerations that are enmeshed in the merits of the dispute, that affect the decision on the merits, or that are affected by that decision." <u>United States v. Shah</u>, 878 F.2d 272, 274 (9th Cir. 1989). It confirmed the sale ordered in the Court's 2015 Foreclosure Order, ECF No. 158, which was entered after the August 31, 2015 Order granted the Government's motion for summary judgment, ECF No. 157. Put simply, there is nothing "collateral" about the Court's April 10, 2018 Order confirming a sale that is at the center of this dispute.

The Court thus finds that the Statons are not entitled to an immediate appeal under the collateral order doctrine.

## II. Interlocutory Review Under 28 U.S.C. § 1292(a)(1)

The Statons also contend that the April 10, 2018 Order is appealable under 28 U.S.C. § 1292(a).[9] Staton Mem. at 3.

---

[9] The Statons do not specify which provision of 28 U.S.C. § 1292(a) permits their interlocutory appeal. The Court addresses § 1292(a)(1), however, because Mrs. Staton asserted that it applied in her memorandum supporting her last motion for leave to file an interlocutory appeal, <u>see</u> ECF No. 312 at 1-2, and no other provision seems to provide a plausible basis for the Statons' current motion.

Under 28 U.S.C. § 1292(a)(1), the courts of appeals have jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions."  The Supreme Court has stated that an order may be appealable under section 1292(a)(1) if it has the "practical effect" of denying an injunction. Carson v. American Brands, 450 U.S. 79, 83-84 (1981).

The Court finds that § 1292(a)(1) does not apply to the Statons' latest attempt to appeal.  The Government's Motion for an Order Confirming Sale, Approving Commissioner's Report and Distributing Proceeds did not request injunctive relief. The Court's April 10, 2018 Order neither granted (continued, modified, refused or dissolved) an injunction, nor had the practical effect of doing so.  ECF No. 330.  In contrast, the April 10, 2018 Order confirmed the sale, approved the Commissioner's Report, and ruled on the order of priority for future disbursements.  Id.  None of these issues implicate relief in the nature of an injunction.  See Pl.'s Mem. at 4.

The Statons also argue that the April 10, 2018 Order is appealable under § 1292(a)(1) "because it involves a change in possession or ownership" of the Residence.  Staton Mem. at 3. As support, the Statons cite Forgay v. Conrad, 47 U.S. 201 (1848), in which the Supreme Court treated as final an appeal from an order that directed immediate transfer of land, slaves

and money and ordered an accounting, despite the absence of the accounting and judgment. The Supreme Court held the decree was final because "[i]t decide[d] the title of all the property in dispute, decrees that it be delivered up to the complainant, and that execution issue." Id. at 202. The Forgay-Conrad rule subsequently has been articulated as follows: "an order is final if it requires the immediate turnover of property and subjects the party to irreparable harm if the party is forced to wait until the final outcome of the litigation." Cannon v. Hawaii Corp. (In re Hawaii Corp.), 796 F.2d 1139, 1143 (9th Cir. 1986).

While the Forgray-Conrad rule is not connected to § 1292(a)(1)—rather, it is an exception to the finality requirement under § 1291—it creates a close question in this matter as to whether the April 10, 2018 Order is appealable. The Court finds that it is not appealable because Forgay is distinguishable.

As an initial matter, several courts of appeals have questioned the continuing vitality of Forgay in light of the development of the collateral order doctrine. Pigford v. Veneman, 369 F.3d 545, 547 (D.C. Cir. 2004) ("We have questioned, however, whether Forgay has continuing vitality apart from the collateral order doctrine." (citation and internal quotation omitted)); Petties v. District of Columbia, 227 F.3d 469, 472 (D.C. Cir. 2000) ("The Supreme Court has

recognized but a single variation on the theme of finality,
namely the collateral order doctrine."); HBE Leasing Corp. v.
Frank, 48 F.3d 623, 632 (2d Cir. 1995) ("Our cases cast
considerable doubt on whether Forgay is still applicable . . .
."); Cf. HSBC Bank USA, N.A., 793 F.3d at 780 ("While there is
some tension between the Forgay doctrine and Mohawk Industries,
see 558 U.S. at 106, 130 S. Ct. 599, and that tension has been
reinforced by Bullard, the Court has not told us that Forgay has
been overruled . . . .").

        The Ninth Circuit has largely confined application of
the Forgay-Conrad rule to orders that were otherwise collateral
orders under Cohen.  E.g., Cannon, 796 F.2d at 1142 ("Because
the liberalized rules of finality for bankruptcy appeals do not
apply to 28 U.S.C. § 1291 appeals, this court has jurisdiction
over this case only if the order of the district judge is an
appealable collateral order."); see also In re Vylene
Enterprises, Inc., 968 F.2d 887, 893 (9th Cir. 1992) (discussing
Cannon and explaining: "We decided that the district court's
order to turn property over to the estate was final because it
was a collateral order under Cohen and it met the Forgay v.
Conrad rule."); Weingartner v. Union Oil Co. of Cal., 431 F.2d
26, 29 (9th Cir. 1970) ("The Cohen approach rests upon either of
two underpinnings: the 'collateral order' rule . . . . or the
likelihood of 'irreparable harm' to a party if immediate review

is not allowed . . . . Forgay v. Conrad, 47 U.S. 201, 6 How.
201, 12 L.Ed. 404 (1848).  Under neither premise does Cohen
render the order before us appealable.").

Even if Forgay has not been displaced by the
collateral order doctrine, however, the Court finds that the
April 10, 2018 Order did not finally adjudicate the rights of
the parties in this matter for the reasons stated in Section I,
supra.  Mrs. Staton's share of the sale proceeds has not yet
been determined, meaning that "[t]he whole law of the case, so
far as the [Statons] are concerned, is [not] settled by the
decree."  Forgay, 47 U.S. at 202.  And the Statons' appeal is
not "easily separable from the other claims involved in the
proceeding."  Cannon, 796 F.2d at 1143.  In contrast, the
Statons filed only a hand-written notice of appeal, which
appealed from the entire April 10, 2018 Order.  See ECF No. 328.
The entire April 10, 2018 Order is not separable from any other
claims in this proceeding.

Additionally, the April 10, 2018 Order retained
jurisdiction "to address any appropriate issues that remain,
including [(1) the reasonable attorneys' fees and costs to which
Lender Defendants' are entitled and (2) the accrued interest and
any penalties to which the Government is entitled], as well as
the possible entry of a deficiency judgment in favor of" the
Government.  April 10, 2018 Order at 28 ¶ 16.  Unlike in Forgay,

more remains to be done than "the ministerial duty of stating an account." 47 U.S. at 202; see also In re Four Seas Ctr., Ltd., 754 F.2d 1416, 1419 (9th Cir. 1985) ("The order from which Davre's appeals therefore does not fall within the Cohen exception. Nor is it sufficiently conclusive to fall within the rule of Forgay v. Conrad, 47 U.S. (6 How.) 201, 204, 12 L.Ed. 404 (1848), where appeal was allowed of an order that awarded property and left nothing more to be done than an accounting.").

Further, as stated above, the Forgay-Conrad rule permits immediate appeal if an order "requires the immediate turnover of property and subjects the party to irreparable harm if the party is forced to wait until the final outcome of the litigation." Cannon, 796 F.2d at 1143. The Statons have not shown that the April 10, 2018 Order confirming the sale will irreparably harm them here. Title to the Residence has not yet passed to the purchaser, and, as discussed in Section IV, supra, they may obtain a stay as of right by posting an adequate supersedeas bond. E.g., HSBC Bank USA, N.A., 793 F.3d at 780 (reasoning that order confirming a judicial sale would not threaten irreparable harm because"[a] mortgagor can delay the permanent transfer of title to the purchaser by obtaining a stay pending appeal of the order confirming sale"). An appeal of the April 10, 2018 Order under § 1292(a)(1), or the Forgay-Conrad rule, is thus inappropriate.

26

## III.  Interlocutory Review Under 28 U.S.C. § 1292(b)

The Statons again contend that the Court should permit them to file an interlocutory appeal under 28 U.S.C. § 1292(b). Staton Mem. at 2-3.  Courts have explained that a "movant seeking an interlocutory appeal [under 28 U.S.C. § 1292(b)] has a heavy burden to show that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978) (internal quotation marks omitted); see also James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) ("Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly."); Du Preez v. Banis, No. CIV. 14-00171 LEK-RL, 2015 WL 857324, at *1 (D. Haw. Feb. 27, 2015) (collecting cases).  Certification for interlocutory appeal under § 1292(b) is only appropriate where: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

### A. Whether the April 10, 2018 Order Involves a Controlling Question of Law

A question of law is controlling if the resolution of the issue on appeal could "materially affect the outcome of

27

litigation in the district court." In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1981). A "question of law" under § 1292(b) means a "pure question of law" rather than a mixed question of law and fact or the application of law to a particular set of facts.[10] Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc., No. 09-CV-320-HU, 2010 WL 952273, at *3 (D. Or. Mar. 10, 2010) (collecting cases); see also McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir. 2004) (Section "1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts"); Oliner v. Kontrabecki, 305 B.R. 510, 529 (N.D. Cal. 2004) ("Because the alleged 'controlling questions of law' raised by Kontrabecki are inextricably intertwined with the bankruptcy court's factual findings, an interlocutory appeal is not appropriate."); In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig., 212 F. Supp. 2d 903, 907 (S.D. Ind. 2002) (stating that a question of law is one that presents an abstract legal issue that can be decided quickly and cleanly without having to study the record).

---

[10] As the Court explained in its April 3, 2018 Order Denying Defendant Brenda L. Staton's Motion for Leave to File an Interlocutory Appeal, ECF No. 321, questions of law appropriate for interlocutory appeal include "'the determination of who are necessary and proper parties, whether a court to which a cause has been transferred has jurisdiction, or whether state or federal law should be applied.'" In re Cement Antitrust Litig., 673 F.2d at 1026 (quoting United States v. Woodbury, 263 F.2d 784, 787 (9th Cir. 1959)).

The Court finds that the questions of law the April
10, 2018 Order poses[11] are not pure questions of law appropriate
for interlocutory review.  First, the Court had broad discretion
in deciding whether to confirm the judicial sale.  See April 10,
2018 Order at 14; see also Lender Def.'s Mem. at 3-4.  The
Court's decision to confirm the sale in the April 10, 2018 Order
was grounded in the particular facts of this case.  The Court
found confirmation appropriate after consideration of, among
other things, whether: (1) the sale complied with this Court's
2015 Foreclosure Order, ECF No. 158; (2) the $1,135,000.00 sale
price for the Residence was adequate when compared to the 2018
real property tax appraisal value of $1,366,900.00; (3) the
Statons' extensive challenges in this Court and the Bankruptcy
Court, as well as their failure to cooperate with the
Commissioner, negatively affected the sale price; and (4) the
Commissioner conducted a sufficiently aggressive auction.
Accordingly, the propriety of the sale confirmation in this
matter is not a pure question of law determinable without
analyzing the factual record of this case.

Second, whether the Court's approval of the
Commissioner's Report was proper is not a pure question of law.

---

[11] The Statons' notice of appeal, which this Court has construed as a motion
for leave to file an interlocutory appeal under 28 U.S.C. § 1292, does not
propose a controlling question of law justifying interlocutory review at this
juncture.  ECF No. 328.

The April 10, 2018 Order approved the Commissioner's Report after explaining that the Commissioner served since 2015, had to interact with uncooperative property owners, oversaw three attempted auctions, and held a final successful auction during which some fifty bids were submitted. April 10, 2018 Order at 20. It also noted that the Commissioner continued to field inquiries from prospective bidders leading up to the confirmation hearing. For these reasons, the Court exercised its discretion to approve the Commissioner's Report.

Finally, the Court has thoroughly addressed the fact that the Statons own the Residence as tenants by the entirety—including its effect on the order of priority—on several occasions. In the Court's August 31, 2015 Order Granting Plaintiff's Motion for Summary Judgment on the Third Claim in the Complaint, ECF No. 157, the Court stated that "[s]pouses that own property as tenants by the entirety under Hawaii law hold 'property' or 'rights to property' subject to liens under 26 U.S.C. § 6321," id. at 16-17 (citing U.S. v. Lindsey, Civ. No. 11-00664 JMS-KSC, 2013 WL 3947757, at *5 (D. Haw. July 30, 2013)). The Court further explained:

> In order to enforce its tax liens, the Government is empowered, under 26 U.S.C. § 7403, to join all parties with an interest in the subject property and request a judicial sale of the property. United States v. Rodgers, 461, 677, 691-92 (1983) (citing 26 U.S.C. § 7403). The Government

may seek the sale not only of the debtor's interest in the property, but the entire property held by the debtor and his spouse in a tenancy by the entirety.  Id. at 693-94; see also In re Pletz, 221 F.3d 1114, 1118 (9th Cir. 2000).  In such instances, the Court may order the sale of the entire property and compensate the nondebtor spouse for her ownership interest.  Pletz, 221 F.3d at 1117 (citations omitted).  Each spouse owns a fifty percent interest in property held as tenants by the entirety under Hawaii law.  Lindsey, 2013 WL 3947757 at *6 n.3 (citations omitted); United States v. Webb, Civ. No. 07-00564 JMS-KSC, 2008 WL 4761745 * 6 n.12 (D. Haw. Oct. 23, 2008) (citations omitted) . . . The evidence shows that Ronald Staton and Brenda Staton purchased and own the Residence as tenants by the entirety, as reflected in the Agreement of Sale and Deed.  Duffy Decl. ¶¶ 8-9, Exs. G, H, ECF Nos. 109-2, 109-4, 109-5.

. . .

Brenda Staton has an interest in the Residence that must be taken into account. According to the Title Report for the Residence, she and Ronald Staton own the Residence as tenants by the entirety.  Title Report at 1, ECF No. 138-2. In this jurisdiction, a court may order the sale of the entire property under 26 U.S.C. § 7403 and compensate a nondebtor spouse for her fifty percent interest from the sale proceeds.  See Pletz, 221 F.3d at 1117; Lindsey, 2013 WL 3947757 at * 6 n.3 (citations omitted); Webb, 2008 WL 4761745 * 6 n.12 (citations omitted).

However, the Title Report also shows that Brenda and Ronald Staton are jointly liable on the Capstead mortgage for the Residence. See Title Report at 3, ECF No. 138-2.  The uncontested amount owed under the Statons' mortgage is $294,708.82 as of July 31, 2015. See Capstead's Supp. Rpt. at 2, ECF No. 151;

Sieber Affd. ¶ 5, ECF No. 156; Tr. 15:11-18.

> Accordingly, since the Court has determined
> that the Statons' Residence should be
> foreclosed and sold free and clear of all
> liens, including Capstead's senior mortgage,
> without objection from any party, the
> foreclosure of Capstead's mortgage
> necessarily includes Brenda Staton's one-
> half interest in the Residence.
>
> . . .
>
> As Plaintiff points out, there is "no
> language in Section 7403 which suggests that
> it does not apply when the United States'
> tax liens are junior to other liens." Id. at
> 3. Moreover, as a practical matter, the
> Government must often seek to foreclose on
> property where there is a first priority
> mortgage holder. In such cases, this Court
> has allowed the sale of the real property to
> satisfy federal tax liabilities and has
> ordered that the mortgage interest be
> satisfied before the liens are paid from
> sale proceeds. Id. at 3-4 (citing Webb,
> 2008 WL 4761745; Lindsey, 2013 WL 3947757). .
> . . The Court is therefore satisfied that it
> is appropriate to order foreclosure of
> Plaintiff's tax liens and a judicial sale of
> the Residence in this case, with the
> understanding that Capstead's senior
> mortgage will be satisfied from the sale
> proceeds before Plaintiff's liens.

ECF No. 157 at 17-22; see also ECF No. 276 at 9-10.

In addition, the Court's April 3, 2018 Order quoted

the above reasoning in denying Mrs. Staton's motion for leave to

file an interlocutory appeal. ECF No. 321 at 17-19. It further

noted that: (1) the Supreme Court had previously held that one

spouse's federal tax liens may attach to property a married

couple owns as tenants by the entirety, id. at 19 (citing United States v. Craft, 535 U.S. 274, 284 (2002)); and (2) Hawaii law required that the Lender Defendants, as senior lienholders, be made parties to this action, id. at 19-20 (citing Hawaii Revised Statutes § 667-2). Evaluating the same circumstances on which the Statons rely here, the April 3, 2018 Order found that "the Statons['] own[ership] [of] the Residence as tenants by the entirety does not give rise to a pure question of law . . . ." Id. at 20.

The Statons' latest motion for leave to file an interlocutory appeal is no different. To the extent the Statons' Motion argues that the order of priority approved in the April 10, 2018 Order is somehow improper because the Government's federal tax liens are solely against Mr. Staton, this Court's above-quoted reasoning forecloses that argument. And the order of priority flowing from that reasoning does not produce a controlling question of law under § 1292(b).[12]

### B. Whether a Substantial Ground for Difference of Opinion Exists on the Controlling Question of Law

The Statons cannot satisfy § 1292's second requirement that a "substantial ground for a difference of opinion [on the

---

[12] Even if the determining the order of priority in light of the Statons' ownership of the Residence as tenants by the entirety were a pure question of law, the Statons cannot satisfy the remaining requirements for an interlocutory appeal under § 1292(b), including that there is substantial ground for a difference of opinion. See Section III.B, supra.

controlling question of law] exists." 28 U.S.C. § 1292(b).

There is a "substantial ground for difference of opinion" if

"there is a genuine dispute over the question of law that is the

subject of the appeal." In re Cement Antitrust Litig., 673 F.2d

at 1026 (emphasis added); see also Couch v. Telescope, Inc., 611

F.3d 629, 633 (9th Cir. 2010) ("To determine if a substantial

ground for difference of opinion exists under § 1292(b), courts

must examine to what extent the controlling law is unclear.").

Such a dispute exists, for example, if the circuits are in

disagreement and the court of appeals in which the district

court sits has not decided the issue, the issue involves

complicated questions of foreign law, or the issue is a novel

and difficult one of first impression. Couch, 611 F.3d at 633.

"However, just because a court is the first to rule on a

particular question or just because counsel contends that one

precedent rather than another is controlling does not mean" that

sufficient grounds exist. Id. Said differently, "[a] party's

strong disagreement with the Court's ruling is not sufficient

for there to be a 'substantial ground for difference'; the

proponent of an appeal must make some greater showing."

Kowalski v. Anova Food, LLC, 958 F. Supp. 2d 1147, 1154 (D. Haw.

2013) (citation omitted); see also First Am. Corp. v. Al-Nahyan,

948 F. Supp. 1107, 1116 (D.D.C. 1996) ("Mere disagreement, even

if vehement, with a court's ruling on a motion . . . does not

establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal.").

Here, there is no substantial ground for a difference of opinion about whether the foreclosure sale should have been confirmed. As the Court noted in the April 10, 2018 Order, "the [sale price] of $1,135,000 is relatively close to the 2018 real property tax appraisal value of $1,366,900.00." ECF No. 330 at 19 (alterations and internal quotation marks omitted) (citing ECF Nos. 276 at 8 and 326-1 at 1). The sale price, moreover, was obtained despite: (1) the Statons' uncooperative interactions with the Commissioner and delay tactics; and (2) the fact that it was accepted as part of a forced sale scenario that makes reaching fair market value difficult. The Court exercises broad discretion when confirming a judicial sale, and the Statons' unsupported assertion that the Residence could have sold for a higher price is insufficient under § 1292(b)'s second prong.

Similarly, there is not a substantial ground for a difference of opinion about whether the Commissioner's Report should have been approved. The Commissioner submitted a thorough report, ECF No. 270, documenting the steps he took to sell the property in accordance with this Court's 2015 Foreclosure Order, ECF No. 158. The Report also detailed the

Statons' failure to cooperate with the Commissioner in permitting access to the Residence for purposes of inspection and open houses. See generally ECF. No. 270 at ¶¶ 7-24. The April 10, 2018 Order accordingly noted, among other things, that the Commissioner "has served as Commissioner since 2015, had to work with uncooperative property owners, and oversaw three attempted auctions and the final successful auction during which some fifty bids were submitted." ECF 330 at 22. After considering the entirety of the Commissioner's Report, the Court exercised its discretion to approve the Commissioner's request for fees, expenses, and excise taxes in the total amount of $39,048.15. Id. at 26-27. The Statons do not attempt to explain why approval of the Commissioner's Report was improper, let alone how substantial ground for a difference of opinion exists regarding approval.

With respect to the effect of the Statons' ownership of the Residence as tenants by the entirety (and whether that fact renders the approved order of priority questionable), there remains no substantial ground for a difference of opinion. See April 3, 2018 Order, ECF No. 321 at 22-23. As explained in the April 3, 2018 Order, the Government's ability to enforce its tax liens against Mr. Staton, and the Lender Defendants' ability to enforce their mortgage made by Mr. and Mrs. Staton, through foreclosure and sale of the Residence, free and clear of all

liens, is clear and well established.  See id. and cases cited
supra at 17-19; see also Pl.'s Mem. at 3-4.  Moreover, the
Statons again fail to cite conflicting authority on the issue or
bring to the Court's attention a circuit split.  See Couch, 611
F.3d at 633.  The Court has consistently explained that the law
applied in its August 31, 2015 Order forecloses the Statons'
arguments rooted in their ownership of the Residence as tenants
by the entirety.  E.g., February 16, 2018 Order, ECF No. 276 at
9-10; April 3, 2018 Order, ECF No. 321 at 22-23.  And again,
Mrs. Staton is jointly and severally liable under the Lender
Defendants' senior mortgage, which is necessarily joined to this
action and is being foreclosed.

**C. Whether an Interlocutory Appeal of the April 10, 2018
Order Will Materially Advance the Ultimate Termination of
the Litigation**

As the Court explained in its April 3, 2018 Order,
permitting the Statons to file an interlocutory appeal would not
materially advance this litigation.  A district court generally
should not permit an interlocutory appeal where doing so would
prolong litigation rather than advance its resolution.  Fenters
v. Yosemite Chevron, 761 F. Supp. 2d 957, 1005 (E.D. Cal. 2011).
Courts within the Ninth Circuit have held that resolution of a
question materially advances the termination of litigation if it
"facilitate[s] disposition of the action by getting a final
decision on a controlling legal issue sooner, rather than later

[in order to] save the courts and the litigants unnecessary trouble and expense." See United States v. Adam Bros. Farming, Inc., 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004); see also In re Cement Antitrust Litig., 673 F.2d at 1026 (stating that § 1292(b) is used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation").

The April 10, 2018 Order is but another step toward final judgment in this nearly six-year litigation. In the April 10, 2018 Order, the Court "reserve[d] jurisdiction to address any appropriate issues that remain, including [(1) the reasonable attorneys' fees and costs to which Lender Defendants' are entitled and (2) the accrued interest and any penalties to which the Government is entitled], as well as the possible entry of a deficiency judgment in favor of" the Government. April 10, 2018 Order at 28. The foregoing determinations would also determine the share of the sales proceeds to which Mrs. Staton is entitled, as well as the share to which the Government is entitled. An interlocutory appeal at this stage would unnecessarily delay resolution of these issues and the impending issuance of a final judgment in this matter. Pl.'s Mem. at 4; Lender Def.'s Mem. at 4-5.

The Statons' continuing challenges of the foreclosure sale proceedings in this Court and the United States Bankruptcy

Court have hindered the timely resolution of this matter, including the issuance of a final judgment. The Statons' motion for permission to file an interlocutory appeal here was filed just three days after entry of the April 3, 2018 Order denying Mrs. Staton's previous motion for permission to file an interlocutory appeal. Such motions—like the Statons' serial bankruptcy filings and other challenges—delay this case in a manner that does not benefit any party.

Because granting the Statons' latest motion for permission to file an interlocutory appeal would unnecessarily delay this litigation, the Court finds that the Statons cannot satisfy the third prong of § 1292(b).

## IV. Requirements to Stay Proceedings

The Court notes that because the Statons have filed a notice of appeal, ECF No. 328, Federal Rule of Civil Procedure 62(d) allows them to file a motion to obtain a stay by supersedeas bond. Fed. R. Civ. P. 62(d); e.g., United States v. Mansion House Ctr. Redevelopment Co., 682 F. Supp. 446, 450 (E.D. Mo. 1988) ("The Court concludes that Rule 62(d) applies to mortgage foreclosure judgments in the same way that it applies to money judgments: the appellant may obtain a stay of a mortgage foreclosure judgment as a matter of right by posting an adequate supersedeas bond . . . ."). The stay would take effect when the Court approves the bond. Fed. R. Civ. P. 62(d).

For the Court to approve any supersedeas bond, such bond would have to adequately provide security for the maximum amount to which the Commissioner, Lender Defendants, and the Government are entitled from the proceeds of the sale.[13]

---

[13] In the April 10, 2018 Order, the Court approved: (1) the Commissioner's fees, expenses and excise taxes, in the total amount of $39,048.15; (2) Lender Defendants' request for $289,949.89 in principal and $4,357.59 in interest as of March 1, 2018, ECF No. 282; and (3) the Government's judgments against Mr. Staton in the amount of $355,526.74. ECF No. 330 at 22-23, 26. In addition, Lender Defendants claim entitlement to attorneys' fees and costs in the amount of $128,947.19, ECF No. 282, while the Government claims entitlement to an additional amount of $56,639.57 (representing accrued interest and penalties on its judgments calculated to March 30, 2018), ECF No. 271 at 2. The maximum, aggregate amount to which the Commissioner and Lender Defendants—who have priority over the Government and Mrs. Staton—will be entitled is $462,302.80 ($39,048.15 to the Commissioner, and $423,254.65 to Lender Defendants). The determination of the reasonable amount of attorneys' fees and costs to which Lender Defendants are entitled has been referred to Magistrate Judge Kevin Chang for a Findings and Recommendation.

The remaining proceeds after these distributions will be divided evenly among the Government and Mrs. Staton. See ECF No. 330 at 26-27. As stated above, the Government's judgments against Mr. Staton are in the amount of $355,526.74. The Government also claims entitlement to an additional amount of $56,639.57 (representing accrued interest and penalties on its judgments calculated to March 30, 2018), and the Court will determine the propriety of the claimed amounts of accrued interest and any penalties at a future hearing. See ECF No. 330 at 26. In any event, the distribution to the Government is projected to be inadequate to satisfy the full amount of its judgments against Mr. Staton, including accrued interest and penalties. The Court's preliminary calculations under this situation project that the Government will receive around $336,348.59 in proceeds from the sale, a figure which is calculated by dividing in half the $672,697.18 in sale proceeds projected to be remaining after the maximum distributions are made to the Commissioner and Lender Defendants.

With the aforesaid $336,348.59 considered together with the highest amounts that may be due to the Commissioner and Lender Defendants, the maximum aggregate amount of the sales proceeds the Commissioner, Lender Defendants, and the Government might receive in this matter is near $798,651.39 ($39,048.15 + $423,254.65 + $336,348.59), rounded to $798,000.00. Any supersedeas bond the Statons provide will likely need to provide security in this amount. Of course, this amount is an initial estimate of the supersedeas bond the Court would be inclined to approve, and the parties in this matter will have an opportunity to object to the same.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants Ronald and Brenda Statons' Motion for Leave to File an Interlocutory Appeal.

IT IS SO ORDERED.

<u>DATED</u>: Honolulu, Hawaii, April 19, 2018



Alan C. Kay
Sr. United States District Judge

<u>United States v. Staton, et al.</u>, Civ. No. 12-00319 ACK-KSC, Order Denying Defendants Ronald and Brenda Statons' Motion for Leave to File an Interlocutory Appeal.